**Roy Wayne PHARO, et ux, Petitioners,**

v.

**CHAMBERS COUNTY, TEXAS,
Respondent.**

No. 95–0385.

Supreme Court of Texas.

Argued Oct. 10, 1995.

Decided May 10, 1996.

Richard J. Clarkson, Beaumont, for Petitioners.

Michael L. Baker, Beaumont, Connie Hawkins, Austin, for Respondents.

Chief Justice PHILLIPS delivered the opinion for a unanimous Court.

This is a wrongful death suit against Chambers County arising from conduct of

the Chambers County Sheriff's Department. The first issue is whether a juror committed reversible jury misconduct by socializing with her boyfriend, a Chambers County deputy sheriff, during the trial, even though the deputy was not involved in the events underlying the lawsuit. The second issue is whether a bailiff committed harmful misconduct by commenting incidentally on "raising taxes" in the presence of the jury panel prior to voir dire. The trial court, after rendering a judgment for the County in accordance with the jury's verdict, refused to grant a new trial based on this conduct. The court of appeals affirmed. 893 S.W.2d 264. Because we conclude that the trial court did not abuse its discretion in overruling the motion for new trial, we affirm the judgment of the court of appeals.

I

At 3:00 a.m. on October 11, 1983, Bryan Pharo was killed when the car in which he was riding crashed into a truck stopped at a roadblock on Interstate 10 in Chambers County. The roadblock had been set up by the Department of Public Safety ("DPS") and the Chambers County Sheriff's Department in an effort to catch an armed robber.

Pharo's parents subsequently sued the DPS and Chambers County in Chambers County district court for wrongful death and survival claims, contending that the defendants negligently set up and supervised the roadblock. Jury selection in the trial began on June 22, 1992.[1] Chuck Morris, Sheriff of Chambers County, was the County's party-representative at trial.

Loretta Pylant was selected as a juror. At the time of trial, Pylant was dating Ferris Collier, a Chambers County deputy sheriff. While the record does not reflect how long the two had been dating, they customarily saw each other "every day." Although Pylant did not disclose this relationship during voir dire, no one contends that she was asked

a question that would elicit this information. Collier had not been a Chambers County deputy sheriff at the time of the accident in 1983, was not subsequently involved in investigating the accident or in preparing the case for trial, and was not a witness at trial.

Based on testimony presented at a post-trial evidentiary hearing, it is undisputed that, during the four days of trial, Pylant and Collier twice had lunch together at a local restaurant. They also had dinner together on at least one occasion. Furthermore, they met for coffee at Collier's office on at least two mornings of the trial, together with other employees of the Sheriff's Department. Collier and Pylant shared the cost of their meals, while Collier and the other Sheriff's Department employees paid for the coffee. Although Collier knew that Pylant was sitting on the jury in a case against Chambers County, both testified that they did not discuss the case while the trial was ongoing. Pylant also testified that she did not discuss the case with any of the other county employees at Collier's office.

After directing a verdict for the DPS during trial, the trial court submitted plaintiffs' claim against Chambers County to the jury. On the vote of ten jurors, including Pylant, the jury reached a verdict favorable to the County. In accordance with this verdict, and the court's earlier directed verdict for the DPS, the court rendered a take-nothing judgment against the plaintiffs.

The plaintiffs subsequently moved for a new trial, with jury misconduct urged as one of their grounds. The plaintiffs claimed that Pylant violated the court's instructions by associating with Collier during trial.

Plaintiffs also sought a new trial based on a comment made by the bailiff in the presence of the venire panel during jury selection. After the panel was seated but prior to voir dire, one of the panel members, who knew the bailiff, made a casual remark to him concerning the aged condition of the jury

1. The record does not reflect the reason for the almost eight-year delay between the filing of suit

in September 1984 and trial.

cards.[2] The bailiff, according to his testimony, responded that "for me to do something about the cards, I would have to raise the taxes." The bailiff, who was wearing his deputy sheriff's uniform when he made the comment, characterized it as a "stupid spontaneous remark." Kevin Dutton, one of the Pharos' attorneys who was present at the time, testified to a slightly different version of events. According to Dutton, the bailiff remarked that "if they wanted to speak with the County about spending money, they needed to talk about taxes being raised." Dutton further testified that "a number of prospective jurors and pretty much all of the panel started laughing when he said that. I would assume they all heard it." Pylant, however, could only recall that the bailiff's remark "had something to do with the cards." When directly asked whether he had commented on raising taxes, Pylant testified: "It's a possibility. I really don't remember." No other jurors were called to testify regarding whether they heard or recalled the bailiff's remark.

The court denied the motion for new trial at the conclusion of the hearing without making findings of fact or conclusions of law. The court of appeals, with one justice dissenting, affirmed the take-nothing judgment for defendants. The court concluded that Pylant did not commit misconduct by associating with Collier during trial, due to the remoteness of Collier's connection to Chambers County in the context of this lawsuit. 893 S.W.2d at 266–67. The court further concluded that the bailiff's comment "was nothing more than a harmless, casual comment about raising taxes in general...." *Id.* at 268.

## II

Trial courts must give this admonishment to jurors immediately after they are selected for the case:

> Do not mingle with nor talk to the lawyers, the witnesses, the parties, or any other person who might be connected with or interested in this case, except for casual greetings. They have to follow these same instructions and you will understand it when they do.

Tex.R.Civ.P. 226a(II). While the record does not affirmatively reflect that the trial court gave this admonishment, neither side raises any issue that it was not given, and we assume that it was.[3] Collier, of course, was neither a lawyer nor a witness in this case, and the plaintiffs do not assert that he was a party.

■ Plaintiffs do assert, however, that as a deputy sheriff, Collier was "connected with or interested in this case." Because the trial court did not render findings of fact or conclusions of law, we must assume that it made all findings in support of its judgment, including a finding that Collier was not connected with or interested in the case. *See Strange v. Treasure City*, 608 S.W.2d 604, 606 (Tex.1980); *Fountain v. Ferguson*, 441 S.W.2d 506, 507 (Tex.), *cert. denied*, 396 U.S. 959, 90 S.Ct. 433, 24 L.Ed.2d 424 (1969). We must determine the appropriate standard under which to review this implied finding.

■ We have held that determining whether jury misconduct occurred is a question of fact for the trial court, and if there is conflicting evidence on this issue the trial court's finding must be upheld on appeal. *See Strange*, 608 S.W.2d at 606. In *State v. Wair*, 163 Tex. 69, 351 S.W.2d 878, 878 (1961), we phrased the rule slightly differently, stating that the trial court's determination as to whether jury misconduct occurred "is ordinarily binding on the reviewing courts and will be reversed only where a clear abuse of discretion is shown." We relied on *Wair* in articulating the standard of review in *Strange*, and we believe that it simply represents an alternative wording of the same standard.

Our previous cases employing this standard of review, however, have involved dis-

---

**2.** It is unclear from the record precisely what these "jury cards" were.

**3.** The statement of facts reflects that "the jury was seated" and "the oath was given to the jury" without recording the actual oath or any accompanying instructions.

putes regarding whether certain events, which would clearly constitute jury misconduct, did in fact occur. *See, e.g., Strange,* 608 S.W.2d at 606–09; *Wair,* 351 S.W.2d at 878; *Brawley v. Bowen,* 387 S.W.2d 383, 384–85 (Tex.1965); *Maryland Cas. Co. v. Hearks,* 144 Tex. 317, 190 S.W.2d 62, 64 (1945). Here, on the other hand, the primary dispute is not whether certain events occurred, as the County concedes that Pylant associated with Collier during the trial. Rather, the issue is whether Collier's *status* rendered that association improper. That is, Pylant committed misconduct only if Collier is "connected with or interested in the case." In some cases the circumstances may establish as a matter of law that an individual is or is not connected with or interested in a case, such that a ruling to the contrary by the trial court will constitute an abuse of discretion. In other cases, like this one, the evidence will permit a conclusion in either direction, so that the trial court's ruling should not be disturbed on appeal.

■ Certainly, not every employee of a county is automatically "interested" in a case in which the county is a party. Notably, four county employees—a maintenance man, a jailer, an employee of the road and bridge department, and a truck driver—were among the members of the venire in this case, and only one of them, the jailer, was challenged as being disqualified to serve as a juror.[4] Collier, however, was a member of the Sheriff's Department, the division of county government whose conduct was being scrutinized at trial. While there is no evidence that a judgment adverse to the County would have affected his salary, duties, or job security, he obviously knew and worked with the Sheriff, and perhaps with the deputies who

were on duty at the time of the accident. One in such a situation might be "interested in" the County either being exonerated or held liable, or he or she might have no interest at all. Thus, determining whether Collier was connected with or interested in the case within the meaning of Rule 226a is a factually intensive inquiry, committed to the sound discretion of the trial court. *Cf. Glenn v. Abrams/Williams Bros.,* 836 S.W.2d 779, 782 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (if prejudice is not established as a matter of law, the factual determination as to whether a venireperson is prejudiced enough to merit disqualification from jury service is within the discretion of the trial court and will not be overturned absent a showing of abuse).

■ On the record before us, the trial court's finding that Collier was not connected with or interested in the case does not constitute an abuse of discretion. We accordingly hold that Pylant did not commit misconduct by associating with Collier during the trial. Under this result, we do not reach the issue of whether, if Pylant's conduct had been misconduct, it would have constituted reversible error. *See* Tex.R.Civ.P. 327(a); *Redinger v. Living, Inc.,* 689 S.W.2d 415 (Tex.1985); *Texas Employers' Ins. Ass'n v. McCaslin,* 159 Tex. 273, 317 S.W.2d 916 (1958).

### III

We next address the bailiff's conduct. As indicated, the evidence at the hearing on the motion for new trial was disputed as to precisely what the bailiff said in the presence of the jury panel. Because we must assume that the trial court resolved this factual dispute in favor of the prevailing party, Cham-

---

4. This accords with the general rule in American jurisdictions, under which an employee of a governmental entity is not automatically disqualified from serving on a jury in a case involving the governmental employer. *See, e.g., Frazier v. United States,* 335 U.S. 497, 510, 69 S.Ct. 201, 208, 93 L.Ed. 187 (1948); *United States v. Wood,* 299 U.S. 123, 149, 57 S.Ct. 177, 186, 81 L.Ed. 78 (1936); *United States v. Chapman,* 158 F.2d 417, 419 (10th Cir.1946); *People v. Rhodus,* 870 P.2d 470, 475 (Colo.1994); *Goldsby v. State,* 240 Miss.

647, 123 So.2d 429, 436 (1960), *cert. denied,* 365 U.S. 861, 81 S.Ct. 829, 5 L.Ed.2d 824 (1961); *City of Bismarck v. Holden,* 522 N.W.2d 471, 473 (N.D.1994). *See generally* 47 Am.Jur.2d *Jury* § 317 (1995). The Court in *Wood* reasoned that "the imputation of bias simply by virtue of governmental employment, without regard to any actual partiality growing out of the nature and circumstances of particular cases, rests on an assumption without any rational foundation." 299 U.S. at 149, 57 S.Ct. at 187.

bers County, *see Fountain*, 441 S.W.2d at 507, we accept the bailiff's version of his remarks, that "for me to do something about the cards, I would have to raise the taxes."

Plaintiffs argue that the bailiff's comment is grounds for a new trial under Texas Rule of Civil Procedure 327, which applies not only to misconduct of the jury but also to misconduct of "the officer in charge of them." They note that Texas Rule of Civil Procedure 283 prohibits the officer in charge of the jury from making any communication to the jury, "except to inquire if they have agreed upon a verdict, unless by order of the court...." Plaintiffs, characterizing the bailiff's remark as a "poisonous outside influence," argue that he prejudiced the jury panel by implying that they would have to bear the cost of any damage award against the County through higher taxes. Plaintiffs further argue that the bailiff's conduct in and of itself established probable prejudice. The County responds that the bailiff's remark was nothing more than a casual comment that was unrelated to any issue in the case.

We conclude that, in the context of this damage suit against the County, the bailiff's reference to "raising taxes" was improper. This misconduct, however, justifies a new trial only if it reasonably appears from the record that "injury probably resulted to the complaining party." Tex.R.Civ.P. 327(a). "To show probable injury, there must be some indication in the record that the alleged misconduct most likely caused a juror to vote differently than he 'would otherwise have done on one or more issues vital to the judgment.'" *Redinger v. Living, Inc.*, 689 S.W.2d 415, 419 (Tex.1985) (quoting *Mrs. Baird's Bread Co. v. Hearn*, 157 Tex. 159, 300 S.W.2d 646, 649 (1957)). Determining the existence of probable injury is a question of law. *See State v. Wair*, 163 Tex. 69, 351 S.W.2d 878, 879 (1961).

It does not reasonably appear from the record that the bailiff's comment resulted in probable injury to the plaintiffs. The evidence indicates that the bailiff made the remark casually, in a context unrelated to the issues in the lawsuit, and in a manner that was perceived by the panel members who heard it as a joke. Further, plaintiffs do not argue that the evidence on the merits so heavily favored them that a tainted verdict might be inferred. *Cf. Fountain*, 441 S.W.2d at 508–09 (indicating that the state of the evidence may be considered in evaluating probable harm from jury misconduct). On this record, we hold that the trial court did not err in denying the motion for new trial based on the bailiff's comment.

Plaintiffs also presented evidence that the bailiff, while the trial was ongoing, commented to an attorney unrelated to the case that the jury would not find for the out-of-town plaintiffs because they knew that any damage award would come out of their own pockets. There is no contention, however, that this unfortunate statement was made in the presence of the jury or was conveyed to the jury. It therefore could not have resulted in injury to the plaintiffs.

For the foregoing reasons, we affirm the judgment of the court of appeals.