**COTTMAN TRANSMISSION SYSTEMS, L.L.C., et al., Appellants,**

v.

**FVLR ENTERPRISES, L.L.C., Appellee.**

No. 05–08–01087–CV.

Court of Appeals of Texas, Dallas.

Aug. 17, 2009.

Rehearing Overruled Sept. 22, 2009.

Michael W. Johnston, Nathan Butler Schattman, Johnston Legal Group PC, Fort Worth, TX, for Appellant.

H. Allen Pennington, Jr., Pennington Hill, LLP, Fort Worth, TX, for Appellee.

Before Justices WRIGHT, BRIDGES, and FRANCIS.

## OPINION

Opinion By Justice WRIGHT.

Cottman Transmission Systems, L.L.C., Cottman Transmission Centers, Inc., and American Driveline Centers, Inc. (collectively "Cottman") appeal from the trial court's judgment following a jury trial. In ten issues, Cottman contends generally: (1) the evidence is legally and factually insufficient to support the jury's findings on assumption of the lease, the breach of contract and tort claims; (2) FVLR's counsel made an improper jury argument; (3) and the trial court erred in denying its post-verdict motion for arbitration. We overrule Cottman's issues and affirm the trial court's judgment.

## Background

FVLR is the landlord of commercial property. Frank Roszell is the manager of the property. On July 15, 2001, FVLR entered into a ten-year lease agreement with LBR, L.L.C. LBR, a franchisee of Cottman, operated a transmission repair shop at the premises. The parties also executed a lease rider. Cottman was involved with the negotiation of the lease and insisted that the lease rider be part of the lease agreement. The lease rider gave Cottman the option to assume the lease upon either its termination or expiration. To exercise its option, Cottman had to assume the obligations and replace LBR as the lessee within thirty days after the termination or expiration of the license agreement.

In early March of 2003, LBR moved out of the leased premises. Its rent was paid through March 15, 2003. FVLR informed Cottman of LBR's abandonment of the premises. Cottman terminated its licensing agreement with LBR. Subsequently, Cottman sent Bob Goodwin to the premises to manage the transmission repair shop. Cottman paid one month's rent. Goodwin became frustrated when, despite several promises from Cottman, it refused to pay any further rent to FVLR. On May 20, 2003, Cottman moved out of the premises.

FVLR sued Cottman alleging causes of action for breach of contract, promissory estoppel, fraud, and negligent misrepresentation. Cottman alleged a counterclaim for conversion. The jury returned a verdict in favor of FVLR on all claims and against Cottman on its counterclaim. For breach of contract, the jury awarded $150,000.00 for loss of rent payments, $28,400.00 for triple net charges, and $1,886.90 for advertising for new tenants. The jury awarded the same triple net charges and advertising cost damages for each of the tort claims as it did for the

breach of contract claim. The jury also awarded attorney's fees. The trial court rendered a judgment based on the jury verdict. This appeal timely followed.

### The Lease and Lease Rider

In its first issue, Cottman contends the evidence is legally and factually insufficient to support the jury's findings that Cottman was bound by the LBR lease agreement and the lease rider. Cottman also complains in its first issue that the instruction on partial performance contained in questions two, three, and six is flawed.

■ A party objecting to a jury charge must distinctly point out the objectionable matter and identify the basis of the objection. Tex.R. Civ. P. 274. The purpose of rule 274 is to afford the trial court an opportunity to correct errors in the charge by requiring objections both to designate the error clearly and to explain the grounds for the complaint. *Carousel's Creamery, L.L.C. v. Marble Slab Creamery, Inc.*, 134 S.W.3d 385, 404–05 (Tex. App.-Houston [1st Dist.] 2004, pet. granted, cause dism'd); *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 793 (Tex. App.-Houston [1st Dist.] 2004, no pet.). An objection that does not identify the claimed error and explain the basis of the complaint is properly overruled and does not preserve error on appeal. *Carousel's Creamery*, 134 S.W.3d at 404.

■ In making its objection to the definition of partial performance, Cottman referred to a Texarkana opinion and an instruction given in that case. Cottman failed, however, to identify the language he wanted included in the instruction or explain the basis for its objection. Thus, we hold that Cottman failed to preserve its complaint relating to the instruction on partial performance. *See* Tex.R.App. P. 33.1.

We now turn to Cottman's sufficiency arguments. In evaluating the legal sufficiency of the evidence to support a finding, we must determine whether the evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We sustain a no evidence point only if there is no more than a scintilla of evidence proving the elements of the claim. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 520 (Tex.2002). In making this determination, we must view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller*, 168 S.W.3d at 807. Evidence does not exceed a scintilla if it is so weak as to do no more than create a mere surmise or suspicion that the fact exists. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex.2004).

To evaluate the factual sufficiency of the evidence to support a finding, we consider all the evidence and will set aside the verdict only if the evidence supporting the jury finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001). However, this Court is not a fact finder, and we may not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could be reached upon review of the evidence. *Mayhew v. Dealey*, 143 S.W.3d 356, 368 (Tex.App.-Dallas 2004, pet. denied).

Cottman contends the evidence is insufficient to support the jury's answers to questions two, three, and six. In response to these three questions, the jury found

that Cottman Transmission Systems bound itself to the lease rider agreement, assumed LBR's obligations under the lease following LBR's default, and that Cottman Transmission Centers assumed the obligations of LBR under the FVLR lease. In answering these questions, the jury was allowed to consider the doctrine of partial performance.

 Initially, we note that the lease agreement and lease rider are subject to the statute of frauds because they concern the lease of commercial real estate for a period greater than one year. *See* TEX. PROP.CODE ANN. § 5.021 (Vernon 2004). Cottman did not sign the LBR lease agreement or the lease rider. At trial, FVLR relied upon the doctrine of partial performance to avoid the statute of frauds. Under the partial performance exception, an agreement that does not satisfy the traditional statute of frauds but that has been partially performed may be enforced if denying enforcement would itself amount to a fraud. *Exxon Corp. v. Breezevale, Ltd.*, 82 S.W.3d 429, 439 (Tex. App.-Dallas 2002, pet. denied). The actions asserted to constitute partial performance must be "unequivocally referable" to the alleged oral agreement and corroborate the existence of that agreement. *Breezevale*, 82 S.W.3d at 439–40. The relied-upon actions "must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced; otherwise, they do not tend to prove the existence of the parol agreement relied upon by the plaintiff." *Id.*

 Cottman argues the evidence is insufficient to support the finding that it bound itself to the lease rider because it was not a party to it. However, Cottman's own president, Todd Leff, testified that Cottman was a beneficiary of the lease rider. Leff readily acknowledged that the lease rider gave Cottman the option to assume the lease.

Cottman also contends the evidence is insufficient to support the finding that it assumed the lease. Cottman makes the following two arguments: (1) the lease rider required it to provide written notice to FVLR of its intent to assume the lease and it never provided such written notice; and (2) its actions did not constitute partial performance under the lease rider.

 With regard to the alleged requirement of written notice to assume the lease, FVLR argued at trial that the lease rider did not contain such a requirement. Alternatively, FVLR argued that the language in the lease rider was ambiguous and, as such, should be construed against Cottman because it drafted it. *See Gonzalez v. Mission Ins. Co.*, 795 S.W.2d 734, 737 (Tex.1990).

The pertinent terms of the lease rider provide:

> *Conditional Assignment.* LESSEE hereby conditionally assigns all of the LESSEE'S right, title and interest in this lease to Cottman Transmission Systems, L.L.C. ("Cottman"). This assignment shall become effective only upon occurrence of both of the following conditions.
>
> 1. Termination or Expiration of the License Agreement between COTTMAN as LICENSOR and LESSEE as OPERATOR for the operation of an automotive transmission center at the leased premises, and
>
> 2. Exercise by COTTMAN of its option to assume the obligations of and to replace LESSEE as the lessee under this lease as provided in the said License Agreement within thirty (30) days after termination or

expiration of said License Agreement.

\* \* \*

LESSOR agrees to give COTTMAN thirty (30) days prior written notice of its intention to re-enter and repossess the premises and to cancel the lease on account of LESSEE'S default of any of the terms, conditions or provisions thereof. During this thirty (30) day period COTTMAN may cure such default or otherwise exercise its right under this conditional assignment.

The lease rider sets forth two conditions for the assumption of the lease by Cottman: (1) termination of the licensing agreement between Cottman and LBR; and (2) exercise of the option by Cottman within thirty days of such termination.

Cottman relies upon the following paragraph in the lease rider for its contention that it had to provide FVLR with written notice of the exercise of its right to assume the lease:

LESSOR is hereby authorized and directed to rely solely upon written notice by COTTMAN of the termination or expiration of the said License Agreement and exercise by COTTMAN of its option to become lessee under this lease and is hereby relieved of any and all liability to LESSEE for any action it takes in so relying.

We note two things about this provision. First, the purpose of this paragraph is to release any claim LBR may have against FVLR in allowing Cottman to assume the lease based on notification from Cottman that LBR's licensing agreement had been terminated. It is for the protection of FVLR. Second, it can be read to require written notice of only Cottman's termination or expiration of its licence agreement with LBR. The lease rider does not explicitly state that Cottman must provide written notice of the exercise of its option

to assume the lease. Assuming this provision is ambiguous, we construe it against Cottman as the drafter. *See Gonzalez*, 795 S.W.2d at 737. We conclude Cottman was not required to give FVLR written notice of its intention to assume the lease.

We now turn to Cottman's contention that the evidence is insufficient to show that it partially performed under the lease rider. Cottman paid rent to FVLR within the thirty-day period it had under the lease rider to assume the lease. Payment of rent was a good indication that Cottman was assuming the lease. The evidence shows, however, that Cottman did much more than pay rent.

On April 10, 2003, Cottman entered into a management agreement with Goodwin regarding the premises. Pursuant to this agreement, Goodwin was to manage and operate the Cottman Transmission Center at least through June 30, 2003 and provided a finder's fee for Goodwin if he found a franchisee for the premises. Cottman contends that its agreement with Goodwin was consistent with a month-to-month tenancy. Contrary to Cottman's analysis, however, is that Cottman's only option under the lease rider was either to assume the lease or not to assume the lease. There was no option under the lease rider to proceed on a month-to-month basis while looking for a replacement franchisee. Therefore, Cottman had no right to enter the management agreement at the leased premises with Goodwin unless it had assumed the lease under the terms of the lease rider.

There is other evidence of Cottman's partial performance under the lease rider. Michael Tidd, a Cottman representative, met with Roszell on March 14, 2003 and informed him that Cottman was terminating its license agreement with LBR and that Cottman was going to take over the premises because it was a good location for

them. Roszell testified that on March 18, 2003, Warren Berest, director of Center Development for Cottman, told him that Cottman "wanted to keep the center." Goodwin also told Roszell that Berest and Tidd told him that Cottman was assuming the lease. Roszell confirmed this understanding in a letter to Berest on April 21, 2003. FVLR did not receive a response from Cottman. Roszell sent a second letter on May 2, 2003 to Berest stating that the lease had been assumed. Again, Cottman did not respond.

Other actions taken by Cottman are consistent with the statements of its representatives regarding the assumption of the lease. Cottman accepted the premises after locks were changed, placed a manager at the premises to run the shop, secured water and electricity from the City of Irving in its name, secured telephone service at the premises in its name, entered into service contracts with local vendors, purchased equipment and had it installed at the premises, and conducted its transmission repair business with the public at the premises.

Having reviewed the evidence, we conclude it is sufficient to show that Cottman was bound by the lease rider and, pursuant to its terms, it exercised its option to assume the lease. We overrule Cottman's first issue.

In its second issue, Cottman contends the evidence is legally and factually insufficient to support the jury's answers to questions four and seven that Cottman "assumed the LBR lease on March 15, 2003." The jury actually found that Cottman's rent obligation *began* on March 15, 2003. The evidence at trial supports this finding. Tidd told Roszell that it would pay rent beginning on March 15, 2003. Berest assured Roszell that Cottman did not want Roszell to lose any money. He told Roszell that Cottman would send him a rent check for March 15th through April

15th. This evidence is sufficient to support the jury's finding. Accordingly, we overrule Cottman's second issue.

In its third issue, Cottman contends that the jury's answers to questions five, eight, nine, ten, eleven, and twelve inquiring into breach of the lease, damages, and attorney's fees should be disregarded because the evidence is insufficient to support the jury's answers that Cottman assumed the lease. We have determined that the evidence is sufficient to support the jury's findings that Cottman assumed the lease. Accordingly, we overrule Cottman's third issue.

In issues four through seven, Cottman asserts error with respect to the jury's findings on the fraud, negligent misrepresentation, and promissory estoppel claims. The tort damages awarded by the jury were identical to the damages awarded for breach of the lease. The one-satisfaction rule limits a plaintiff to one satisfaction for the injuries sustained by him. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex.2000). Because we affirm the trial court's judgment on the breach of the lease and Cottman has been ordered to pay actual damages of $180,726.90, we need not address Cottman's issues regarding the tort claims. *See BBQ Blues Texas, Ltd. v. Affiliated Bus. Brokers, Inc.*, 183 S.W.3d 543, 546 (Tex.App.-Dallas 2006, pet. denied).

### Improper Jury Argument

In its eighth issue, Cottman contends that FVLR's counsel made incurable jury argument during closing argument by referring to Leff, Cottman's president who is also an attorney, as a "Philadelphia lawyer" and by appealing to local standards. Although Cottman did not object to this argument at the time it was made, it raised the issue in its motion for new trial. This was sufficient to preserve the issue for our review. *See Taylor v. Am. Fabri-*

*tech, Inc.,* 132 S.W.3d 613, 624 (Tex.App.-Houston [14th Dist.] 2004, pet. denied).

▮ Incurable jury argument is rare. *Living Ctrs. of Tex. v. Penalver,* 256 S.W.3d 678, 681 (Tex.2008) (per curiam). The complaining party "must show that the argument by its nature, degree, and extent constituted such error that an instruction from the court or retraction of the argument could not remove its effects." *Id.* at 680–81. The previously recognized types of incurable argument have included: (1) appeals to racial prejudice; (2) the use of inflammatory epithets such as "liar," "fraud," "faker," "cheat," and "imposter;" and (3) unsupported charges of perjury. *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 840 (Tex.1979). Incurable jury argument has been found in arguments that make unsupported, extreme, and personal attacks on opposing parties and witnesses. *Id.*

▮ Leff testified that he was a graduate of Temple University's law school in Philadelphia. Although the comment might have been intended to focus the jury's attention on the fact that Leff was not a local attorney, we do not find the reference to Leff as a "Philadelphia lawyer" to be either an inflammatory epithet or personal attack on Leff as a witness. Accordingly, we overrule Cottman's eighth issue.

▮ In its ninth issue, Cottman contends the jury's answer to question twenty-one was "against the great weight and preponderance of the evidence as well as in violation of the court's charge." The Texas Rules of Appellate Procedure require "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX.R.APP. P. 38.1(i). The failure to adequately brief an issue waives that issue on appeal. *Huey v. Huey,* 200 S.W.3d 851, 854 (Tex.App.-Dallas 2006, no pet.). Cottman does not cite any authority to support

its contention that the jury's response to this question was error. Consequently, it has not sufficiently briefed this issue for appellate review. TEX.R.APP. P. 38.1; *Huey,* 200 S.W.3d at 854. We overrule Cottman's ninth issue.

### Request for Post–Verdict Arbitration

▮ In its final issue, Cottman contends that, if it is bound by the lease, then it is entitled to have its dispute with FVLR resolved by binding arbitration. A party waives arbitration if it takes an action inconsistent with its right to arbitration, that is prejudicial to the other party. *In re Oakwood Mobile Homes,* 987 S.W.2d 571, 574 (Tex.1999). Taking a case to trial before seeking arbitration is substantially invoking the judicial process to the other party's detriment. We conclude that Cottman waived its right to arbitration. We overrule its tenth issue.

We affirm the trial court's judgment.