COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-122-CV

 

 

SAM L.
SHIPLEY AND                                                                    
APPELLANTS

CYNTHIA
D. SHIPLEY

 

                                                             V.

 

HOLT TEXAS, LTD D/B/A
                                                                 APPELLEES

HOLT
CAT, A TEXAS 

LIMITED
PARTNERSHIP; AND 

CATERPILLAR,
A DELAWARE 

CORPORATION

                                                       ------------

 

                 FROM
THE 355TH DISTRICT COURT OF HOOD COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------

I.  Introduction








Appellants
Sam L. Shipley and Cynthia D. Shipley appeal from a take-nothing judgment
entered on a jury verdict against them and in favor of Appellees Holt Texas,
LTD d/b/a Holt Cat, a Texas limited partnership; and Caterpillar, a Delaware
corporation.  The Shipleys sued Appellees
for design and marketing defects in the 930G Caterpillar wheel loader.  Sam suffered severe injuries when he made an
emergency exit from the cab of his 930G Caterpillar, and the Shipleys alleged
that the ladder, which was over five feet off the ground and provided ingress
and egress from the cab of the vehicle, was defectively designed and
marketed.  The Shipleys raise six issues
on appeal.  For the reasons set forth below,
we will affirm the trial court=s
judgment. 

II.  Factual and Procedural Background

A. 
Overview of the Trial

The
Shipleys sued Appellees, asserting design defect and marketing defect causes of
action concerning the ladder assembly on the 930G Caterpillar wheel
loader.  Sam was driving his 930G
Caterpillar on his ranch in Granbury when he disturbed a hive of bees.  He was unable to shut the cab doors quickly
enough and was totally covered with bees. 
Sam knew of a nearby creek and decided to exit the cab and lie in the
creek to escape the bees.  The cab of the
930G Caterpillar is five feet high, and a ladder assembly is attached to the
machine for ingress and egress.  Sam
exited the cab with his back to it.








Sam
testified that he could not see because of the bees, so he squatted down on the
platform outside the cab and reached out with his right foot to feel for the
top step of the ladder.  When he did not
feel anything, he tried again, Araking@ his
right foot back to find the ladder.  When
his foot landed on something solid, he either attempted to step to the next
step, lost his balance and fell, or simply jumped.  But, in any event, Sam testified that his
right foot became wedged in a gap behind the top ladder step and that when he
moved forward (whether by stepping, falling, or jumping), his right lower shin
snapped in two as he hit the ground face-first. 
Sam tried to stand but was unable to; he crawled back into the cab,
drove the 930G Caterpillar to a higher location where he knew he could receive
cell phone service, and called 911.  Sam=s
right leg was ultimately surgically amputated below the knee.

For
the trial, Sam=s
930G Caterpillar was brought to the courthouse and was parked in the sally
port.  During trial, the jury, along with
the trial court judge and the lawyers, were permitted to view Sam=s
930G Caterpillar.  Eventually, after a six-day trial involving
eighteen witnesses, the case was submitted to the jury.

B. 
Appellees= Expert Testimony

Appellees
presented expert testimony from biomechanical expert Dr. Mike Scott that Sam=s
foot could not have become wedged in the gap behind the ladder=s
first rung but that Sam=s injury was consistent with
a fall or a jump from the 930G Caterpillar=s
cab, in which he landed right-foot-first with a fully-pronated ankle.  Appellees also presented the expert testimony
of Mr. Ronald Brass.  Mr. Brass testified
concerning Caterpillar=s design team=s
consideration of the ISO[2]
and SAE[3]
standards and opined that the 930G Caterpillar=s
ladder design was reasonably safe.








C.  The
Jury Deliberations

After
retiring to deliberate, the jury sent out a note asking if it could again view
Sam=s
930G Caterpillar.  The trial court
responded with a note answering, A[N]o.@  At some point later in the deliberations, the
jury attempted to view two DVDs on the court-provided DVD player in the jury
room.  The only two DVDs offered into
evidence during trial were a DVD of Mr. Brass utilizing the ladder to enter and
exit the cab of a 930G Caterpillar and a DVD containing x-rays and CAT scans
documenting Sam=s injuries, including the
fractures to his right leg. Because of a tripped breaker switch, the DVD player
in the jury room was inoperable during the jury=s
deliberations.  The jury was unable to
review the DVDs.  Eventually, the jury
returned a ten-to-two defense verdict, answering Ano@ to
the design defect and marketing defect questions submitted in the court=s
charge. 

D.  The
Shipleys= Motion for New Trial








The
Shipleys filed a motion for new trial asserting that the inoperable DVD player
in the jury room prevented the jury from performing its essential function of
reviewing the evidence and, consequently, was an outside influence on the jury
constituting jury misconduct.  The
Shipleys attached the affidavits of three jurors to their motion for new
trial.  Each affidavit stated that, upon
retiring to the jury room, the jury=s
first vote on Question One (the design defect question) had been six to
six.  Each affidavit stated that the jury
had tried to play two DVDs in the court-provided DVD player in the jury room
but had been unable to view the DVDs because the DVD player was inoperable. 

The
trial court conducted a hearing on the Shipleys=
motion for new trial. The three jurors who had provided affidavits and the
trial court=s
court coordinator, Ms. Weisand, all testified at the hearing.  The jurors testified to the same matters set
forth in their affidavits and confirmed that the jury=s
attempted use of the DVD player occurred after the jury had been told that they
could not view Sam=s 930G Caterpillar again.  Ms. Weisand testified that it was her job was
to make sure that the DVD player was operable, that a fuse had blown in the
jury room, that the DVD player was not operable during the jury=s
deliberations, and that, subsequently, she had called maintenance to fix the
electrical problem.

After
hearing the evidence presented by the Shipleys, the trial court stated on the
record,

We never heard a word from
the jury about whether or not there was some mechanical breakdown in the jury
room that was preventing them from seeing some aspect of the evidence.  You know, had that been communicated, there
likely would have been some responsive recognition by the Court to that andCand
an effort made to resolve those problems, but thatCthat
was never brought to the Court=s attention.


The trial court overruled
the Shipleys=
motion for new trial.  The Shipleys
perfected this appeal.

III.  Jury Misconduct Not Established








In
their first issue, the Shipleys argue that they were deprived of a fair trial
because the DVD player in the jury room was inoperable during the jury=s
deliberations and the jury twice attempted to use it to view two DVDs.[4]  Thus, the Shipleys argue that the trial court
abused its discretion by not granting their motion for new trial based on jury
misconduct.








To
warrant a new trial for jury misconduct, the movant must establish (1) that the
misconduct occurred, (2) that it was material, and (3) that it probably caused
injury.  See Golden Eagle Archery,
Inc. v. Jackson, 24 S.W.3d 362, 372 (Tex. 2000).  Whether misconduct occurred and caused injury
are questions of fact for the trial court. 
See id. (holding that Awhether
misconduct occurred and caused injury is a question of fact for the trial court@); Pharo
v. Chambers County, 922 S.W.2d 945, 948 (Tex. 1996).  Misconduct justifies a new trial only if it
reasonably appears from the record that injury probably resulted to the
complaining party.  Id. at 950; see
Tex. R. Civ. P. 327(a) (providing trial court may grant a new trial based on
jury misconduct only if Ait reasonably appears from
the evidence both on the hearing of the motion and the trial of the case and
from the record as a whole that injury probably resulted to the complaining
party@).  Absent findings to the contrary, we must
assume that the trial court made all findings in support of its decision to
deny the motion for new trial.  See
id.  We review a trial court=s
denial of a motion for new trial based on jury misconduct for abuse of
discretion.  Pharo, 922 S.W.2d at
948B49; Mercado
v. Warner‑Lambert Co., 106 S.W.3d 393, 396 (Tex. App.CHouston
[1st Dist.] 2003, pet. denied).








The
Shipleys established that, at some point after the trial court told the jury
that it could not again view Sam=s
930G Caterpillar, the jury twice attempted to view DVDs admitted into evidence
on the court-provided DVD player and that the DVD player was inoperable.  The Shipleys point out that the only evidence
admitted via DVDs was of Mr. Brass entering and exiting the cab of a 930G
Caterpillar via its ladder (Exhibit 35) and of x-rays and CAT scans of Sam=s
injuriesCincluding
his right leg (Exhibit 645).[5]  They argue that all of this evidence was
critical, especially in light of the trial court=s
ruling that the jury could not again go view Sam=s
930G Caterpillar in the sally port.

For
purposes of our analysis, we will assume that the inoperable DVD player in the
jury room constituted an outside influence on the jury that may be
characterized as jury misconduct.[6]  For the reasons set forth below, we hold
that, even assuming jury misconduct, the jury=s
inability to view the two DVDsCExhibit
35 and Exhibit 645Cwas not calculated to cause
nor did it cause the rendition of an improper verdict.








Exhibit
35 is a DVD offered into evidence by the defense.  We have reviewed it, and as mentioned
previously, it shows one of the defense experts, Mr. Brass, entering and
exiting the cab of a 930G Caterpillar. 
As he exits, Mr. Brass faces away from the cab, as Sam testified he had
exited the cab.  Mr. Brass squats
slightly on the platform ledge above the ladder and rakes his right foot back,
as Sam testified he had done.  Mr. Brass
attempts to jiggle his right heel into the gap behind the top ladder rung, but
he is unsuccessful.  Thus, this DVD
supports the defense theory that Sam=s
right foot did not become lodged behind the top rung of the ladder but that,
instead, Sam simply jumped from the platform and landed right-foot-first with
his ankle in a fully-pronated position.

Exhibit
645 is a CD containing all of Sam=s
x-rays and CAT scans, including those of his right foot and leg.  We have reviewed the CD.  It was made to be viewed on a computer, and
during oral argument the Shipleys=
counsel conceded that the CD might not be viewable on a DVD player at all.  We have throughly reviewed the record, and
the nature of Sam=s fracture to his right leg
was conclusively established.  That is,
neither side disputed the type of fracture that Sam had suffered.  The dispute at trial was over what caused the
fractureCSam=s
right foot becoming trapped behind the top rung of the ladder and being
fractured when he fell face-first to the ground, or Sam jumping and landing
with all of his weight on his right foot and with his right ankle in a
fully-pronated position.  Additionally,
several exhibits, diagrams, and x-rays were introduced into evidence
separately, apart from the CD marked as Exhibit 645. The Shipleys=
medical expert, Dr. Richard Schuster, who was also Sam=s
orthopedic surgeon, testified for the Shipleys extensively concerning Exhibit
643, 1B4,
which are x-rays and parts of CAT scans of Sam=s
right leg and ankle.  These exhibits were
sent to the jury room with the jury. 













In
light of the evidence presented at trial, presented at the motion for new trial
hearing, and contained in the record before us as a whole, and assuming the
trial court made all fact findings in support of its denial of the Shipleys=
motion for new trial, it does not reasonably appear that the Shipleys were
injured by the jury=s inability to view Exhibits
35 and 645 during their deliberations.  See
Golden Eagle Archery, 24 S.W.3d at 372.  Nothing in the record indicates that any juror
would have voted differently if he or she had been able to again view the DVD
of a defense expert entering and exiting the cab of a 930G Caterpillar via the
attached ladder or had again been able to view Sam=s
x-rays and CAT scans on the DVD player (if this disc is even viewable on a DVD
player instead of a computer), especially when x-rays and CAT scans discussed
and explained by Sam=s treating orthopedic
surgeon were admitted into evidence separately and were sent to the jury
room.  See Pharo, 922 S.W.2d at
950.  The evidence in the record on the
issue of how Sam=s right-leg fracture
occurred was hotly contested; the evidence on the merits of this issue did not
so heavily favor the Shipleys that a tainted verdict can be inferred.  See id.; see also Losier v. Ravi,
No. 14-08-00399-CV, 2009 WL 3365867, at *9 (Tex. App.CHouston
[14th Dist.] Sept. 10, 2009, no pet.) (holding that A[o]n
this record, we conclude that the evidence does not rise to the level required
to presume injury for purposes of Rule 327(a)@);
Sharpless v. Sim, 209 S.W.3d 825, 828B29
(Tex. App.CDallas
2006, pet. denied) (holding jury misconduct by juror who conducted her own
independent investigation on internet but did not convey information to entire
jury, was not the type of act that is Asufficiently
prejudicial to justify a presumption of harm@).  We cannot say that the trial court=s
implied findings do not support the conclusion thatCeven
assuming jury misconduct occurred via the inoperable DVD player in the jury
roomCthe
Shipleys were probably not injured by this alleged misconduct.  See Pharo, 922 S.W.2d at 950; see also
Hunter v. Ford Motor Co., 305 S.W.3d 202, 8B9
(Tex. App.CWaco
2009, no pet.) (holding that even assuming jury misconduct, the new trial
movant Acannot
show that injury probably resulted from the misconduct@);
Strauss v. Cont=l Airlines, Inc., 67
S.W.3d 428, 447B48 (Tex. App.CHouston
[14th Dist.] 2002, no pet.) (holding record did not show injury from
misconduct).  We hold that the trial
court did not abuse its discretion by denying the Shipleys=
motion for new trial based on jury misconduct.

We
overrule the Shipleys= first issue.

IV.  Challenges
to Admission of

Defense Expert Testimony Were Waived

   








In
their second and third issues, the Shipleys argue that the trial court erred by
admitting the testimony of defense experts Dr. Scott and Mr. Brass because
their opinions were not legally reliable, had not been subjected to scientific
testing, were contrary to established findings in a widely-accepted legal
treatise, and were contrary to written industry standards.  As pointed out by Appellees, however, the
Shipleys read portions of Dr. Scott=s
and Mr. Brass=s
depositions to the jury in their case-in-chief. 
And the deposition excerpts read to the jury contain the same
information that the Shipleys claim on appeal should not have been admitted.  Consequently, the Shipleys have waived any
error in the introduction of testimony that they offered into evidence.  See, e.g., McInnes v. Yamaha Motor
Corp., U.S.A., 673 S.W.2d 185, 188 (Tex. 1984), cert. denied,
469 U.S. 1107 (1985); Halim v. Ramchandani, 203 S.W.3d 482, 492B93
(Tex. App.CHouston
[14th Dist.] 2006, no pet.).  We overrule
the Shipleys=
second and third issues.

V.  Denial of Directed Verdict

In
their fourth issue, the Shipleys argue that the trial court erred by failing to
grant their motion for a directed verdict on Question One in the court=s
charge.  Question One asked, AWas
there a design defect in the Caterpillar 930G loader in question at the time it
left the possession of Caterpillar, Inc. that was a producing cause of the
injury in question?@ 








A
directed verdict is proper only under limited circumstances: (1) when the
evidence conclusively establishes the movant=s
right to judgment or negates the opponent=s
right, or (2) when the evidence is insufficient to raise a material fact issue.
 See Prudential Ins. Co. of Am. v.
Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000); Farlow v. Harris
Methodist Fort Worth Hosp., 284 S.W.3d 903, 919 (Tex. App.CFort
Worth 2009, pet. denied).  In reviewing
whether the evidence is sufficient to raise a fact issue, we apply the
standards for assessing the legal sufficiency of the evidence.  See City of Keller v. Wilson, 168
S.W.3d 802, 809B28 (Tex. 2005); see also
Exxon Mobil Corp. v. Kinder Morgan Operating L.P. AA@,
192 S.W.3d 120, 126 (Tex. App.CHouston
[14th Dist.] 2006, no pet.).  If there is
any evidence of probative force to raise a fact issue on the question
presented, a directed verdict is improper. 
See, e.g., Bostrom Seating, Inc. v. Crane Carrier Co., 140
S.W.3d 681, 684 (Tex. 2004); Szczepanik v. First S. Trust Co., 883
S.W.2d 648, 649 (Tex. 1994).

Here,
viewing all of the evidence in the light most favorable to the trial court=s
ruling denying the Shipleys=
motion for directed verdict on Question One, the Shipleys did not conclusively
establish their right to judgment on this question; probative evidence existed
raising fact issues concerning Question One. 
Specifically, fact issues existed concerning whether a design defect was
a producing cause of Sam=s injuries.








The
defense=s
theory of the case was that even if a design defect existed, it was not a
producing cause of any injury to Sam because he did not use the allegedly
defective ladder to exit his 930G Caterpillar but simply jumped or fell from
the cab to escape the swarm of bees. 
There is probative evidence in the record to support this theory.  It is undisputed that Sam could not see
because of the bees; the defense experts theorized that Sam leapt or fell five
feet from the truck=s cab to the ground, landing
on his right foot with a fully-pronated ankle, shattering his right leg bones.
Because the Shipleys did not conclusively establish that any design defect in
the 930G Caterpillar=s ladder was a producing
cause of Sam=s
injuries, the trial court did not err by denying their motion for directed
verdict on Question One.  See, e.g.,
City of Emory v. Lusk, 278 S.W.3d 77, 84 (Tex. 2009) (holding trial court
did not err by denying motion for directed verdict when moving party did not
prove fact as a matter of law).

We
overrule the Shipleys= fourth issue.

VI.  Alleged Improper Argument by Defense Counsel

In
their fifth issue, the Shipleys contend that Appellees=
counsel made repeated, incurable comments during his closing argument.  Specifically, the Shipleys claim that
Appellees=
counsel Aleveled
personal attacks against plaintiffs=
counsel and repeatedly accused plaintiffs=
counsel of calling [Appellees=
counsel] and the defense witnesses >liars.=@  Appellees argue that this complaint is not
preserved for our review.

We
have thoroughly reviewed the record of closing arguments from both sides.  The Shipleys=
counsel argued during closing argument that Appellees had told the jury things
that were not true.  Appellees=
counsel began his closing argument by stating,

I=ve
worked with [Shipleys= counsel] now for the better
part of two years, and I kind of consider him a friend.  He=s a
nice guy.  And he has never once called
me a liar until this trial.  I=ve
never been in a courtroom where another lawyer has called me a liar, and I=m
going to look at you in your eyes and I=m going
to tell you that I am not a liar.

The Shipleys did not object.













Generally,
to obtain reversal on the basis of improper jury argument, an appellant must
prove (1) an error; (2) that was not invited or provoked; (3) that was preserved
by the proper trial predicate, such as an objection, a motion to instruct, or a
motion for mistrial; and (4) that was not curable by an instruction, a prompt
withdrawal of the statement, or a reprimand by the judge.  Standard Fire Ins. Co. v. Reese, 584
S.W.2d 835, 839 (Tex. 1979).  Having
failed to object the first time that defense counsel characterized the Shipleys=
counsel=s
argument as accusing him of being Aa
liar,@ the
Shipleys have waived any error from similar arguments made by defense
counsel.  And the only time the Shipleys
asserted an objection to the argument of defense counsel, they did not request
a curative instruction by the trial court.[7]  Nor did the Shipleys raise this alleged jury
argument error in their motion for new trial. Consequently, this claimed error
is not preserved for our review unless it is incurable.  See Reese, 584 S.W.2d at 840
(explaining jury argument error was waived because A[t]here
was no objection to the first argument about which he now complains; there was
no motion to instruct as to either of the two arguments@); Phillips
v. Phillips, 296 S.W.3d 656, 674 (Tex. App.CEl
Paso 2009, pet. denied) (holding alleged jury argument error waived for failure
to object); accord Cottman Transmission Sys., L.L.C. v. FVLR Enters., L.L.C.,
295 S.W.3d 372, 380 (Tex. App.CDallas
2009, pet. denied) (holding unobjected-to, allegedly-improper jury argument
error was preserved via a motion for new trial).

Incurable
jury argument error may be raised on appeal even though no timely objection was
asserted in the trial court.  Living
Ctrs. of Tex., Inc. v. Penalver, 256 S.W.3d 678, 681 (Tex. 2008).  Incurable jury argument is rare.  Id. 
For an argument to be considered incurable, the complaining party must
not have invited or provoked the improper argument.  Id. 
The party claiming incurable harm must persuade the court that, based on
the record as a whole, the offensive argument was so extreme that a Ajuror
of ordinary intelligence could have been persuaded by that argument to agree to
a verdict contrary to that to which he would have agreed but for such argument.@  Phillips v. Bramlett, 288 S.W.3d 876, 883
(Tex. 2009) (quoting Goforth v. Alvey, 153 Tex. 449, 450, 271 S.W.2d
404, 404 (1954)).

Here,
the Shipleys=
counsel invited the comments that he now contends were improper.  The Shipleys counsel argued,

Why
didn=t he [Appellees= counsel] get up to
show their primary defense, other than jumping, offer evidence and be cross
examined by me - - I wouldn=t want to be cross
examined by me - - that this is the only incident?  No, they just want you to take their word for
it.  These same witnesses, who will tell
you they have never heard - - Mr. Niemeier being one of them - - he=s never even heard of
anyone, even a kid at a swimming pool, (indicating) going down, standing on a
ladder backwards, right?  These are
the same people who=ve told you many
things that aren=t true. [Emphasis added.]

 








Alternatively, if the
Shipleys=
counsel did not invite or provoke Appellees=
counsel=s
arguments that neither he nor his witnesses were liars, we hold that these
arguments nonetheless did not interject incurable harm into the trial.  But see Penalver, 256 S.W.3d at 681
(holding arguments comparing defense counsel to the Nazis were incurable).  Appellees=
counsel=s
characterization of the Shipleys=
counsel=s
argument as accusing him and his witnesses of being liars was not, based on the
record as a whole, such an extreme argument that a juror might have been
persuaded to agree to a verdict contrary to that which the juror would have
agreed to but for the argument.  See
Bramlett, 288 S.W.3d at 883.  Nor did
these comments strike at the very core of the judicial process.  See id.  Thus, we alternatively hold that, in any
event, Appellees= counsel=s
arguments were not incurable.

We
overrule the Shipleys= fifth issue.

VII.  The Shipleys=
Motion for Costs of Proof

In
their sixth issue, the Shipleys argue that the trial court erred by denying
their post-judgment motion for reimbursement of the costs they incurred in
proving that the 930H Caterpillar=s Ablack
ladder@ was
a safer alternative design than the ladder on the 930G Caterpillar.  The Shipleys propounded a request for
admission to Appellees, asking them to admit this fact, but Appellees denied
it.  The Shipleys argue that rule of
civil procedure 215.4(b) required the trial court to enter an order awarding
them the costs that they incurred in proving this fact.

Rule
215.4(b) provides,








Expenses on Failure to Admit.  If a party fails to admit the genuineness of
any document or the truth of any matter as requested under Rule 198 and if the
party requesting the admissions thereafter proves the genuineness of the
document or the truth of the matter, he may apply to the court for an order requiring
the other party to pay him the reasonable expenses incurred in making that
proof, including reasonable attorney fees. The court shall make the order
unless it finds that (1) the request was held objectionable pursuant to Rule
193, or (2) the admission sought was of no substantial importance, or (3) the
party failing to admit had a reasonable ground to believe that he might prevail
on the matter, or (4) there was other good reason for the failure to admit.

Tex. R. Civ. P. 215.4(b). 

As
previously mentioned, Question One asked the jury whether a design defect
existed in the Caterpillar 930G loader in question at the time it left the
possession of Caterpillar that was a producing cause of the injury in question.
ADesign
defect@ was
defined using the term Asafer alternative design,@ and
Asafer
alternative design@ was also defined in
connection with Question One. ASafer
alternative design@ was defined as 

a
product design other than the one actually used that in reasonable probability
(1) would have prevented or significantly reduced the risk of the injury in
question without substantially impairing the product=s utility; and (2)
was economically and technologically feasible at the time the product left the
control of Caterpillar, Inc. by the application of existing or reasonably
achievable scientific knowledge. 

 








Based
on the evidence presented at trial, the jury could have determined there was no
Asafer
alternative design@ under the definition
provided to it in the charge.  The jury
could have believed that Sam jumped from the cab of his 930G Caterpillar or
from its top ladder step and that, therefore, no other design Awould
have prevented or significantly reduced the risk of the injury in question.@  Accordingly, Appellees possessed a reasonable
ground to believe that they might prevail on the issue of whether a safer
alternative design existed in these circumstances, and in fact, they may have
prevailed on that issue since the jury answered Ano@ to
Question One.

We
overrule the Shipleys= sixth issue.  

VIII.  Conclusion

Having
overruled each of the Shipleys=
issues, we affirm the trial court=s
judgment.

 

SUE WALKER

JUSTICE

 

PANEL:
DAUPHINOT, WALKER, and MCCOY, JJ.

 

DELIVERED:
May 20, 2010











[1]See Tex. R. App. P.
47.4.





[2]ISO is the
International Standards Organizatoin.





[3]SAE is the Society of
Automotive Engineers.





[4]The Shipleys also
assert another basis for jury misconduct on appeal.  They contend
that the tripped breaker also caused the jury room to become extremely hot and
that the heat constituted an outside influence on the jury.  But this argument was not set forth in their
motion for new trial nor supported by affidavit.  See Tex. R. Civ. P. 327(a) (requiring
ground for jury misconduct to be set forth in motion for new trial and
supported by affidavit).  The Shipleys
questioned the jurors who testified at the motion for new trial hearing about
the temperature in the jury room, but this questioning alone was insufficient
to have preserved this contention for our review on appeal.  See Tex. R. Civ. P. 324(b)(1)
(requiring jury misconduct to be raised in a point in a motion for new
trial).  Nor does the Shipleys= contention that the
inoperable DVD player was an outside influence constituting jury misconduct
preserve the heat-related complaint they assert on appeal because the complaint
preserved in the trial court must comport with the complaint asserted on
appeal.  See Tex. R. App. P.
33.1(a). Consequently, we do not address the merits of this argument that the
Shipleys raise as part of their first issue.





[5]The Shipleys= counsel utilized, as
demonstrative evidence during closing argument, a DVD animation of how Sam contends
that his right foot became lodged behind the top step of the ladder.  But during oral argument, the Shipleys= counsel explained
that this DVD was not ever introduced into evidence and therefore was not sent
to the jury room.  Additionally, the
Shipleys= counsel explained
during oral argument that Exhibit 42, a DVD of Sam driving his 930G
Caterpillar, was likewise not admitted into evidence.  Thus, the only two DVDs possibly at issue
here are the two mentioned above, Exhibits 35 and 645.





[6]We note that this
scenario seems more likely a possible violation of rule 281 of the rules of
civil procedure, which states that Athe jury may, and on request shall, take with
them in their retirement . . . any written evidence.@  Tex. R. Civ. P. 281.  Despite the permissive language of the ruleCAmay, and on request
shall@Cthe supreme court has
held not only that the rule is mandatory, but also that it Ais self‑operative
and requires no request from the jurors or counsel.@  First Employees Ins. Co. v. Skinner,
646 S.W.2d 170, 172 (Tex. 1983).  If the
rule is violated, we then review the record for harm.  See id. at 172B73 (reviewing court
is to evaluate whole case to determine whether denying jury opportunity to
examine exhibits Awas reasonably
calculated to cause and probably did cause the rendition of an improper
judgment@); Formosa
Plastics Corp., USA v. Kajima Int=l, Inc., 216 S.W.3d 436, 464 (Tex. App.CCorpus Christi 2006,
pet. denied); Cruz v. Hinojosa, 12 S.W.3d 545, 550 (Tex. App.CSan Antonio 1999,
pet. denied); see also Tex. R. App. P. 44.1(a)(1); Tex. R. Civ. P.
281.  Thus, the harm analysis that we
apply is the same whether the alleged error is a violation of rule 281 or jury
misconduct.





[7]The Shipleys asserted
several Amisstatement of the
law@ and Amisstatement of the
evidence@ objections during
defense counsel=s closing argument
but made only one objection asserting that defense counsel=s argument
constituted an attack on the Shipleys= counsel. 
The Shipleys= counsel objected,
stating, AObjection, Your
Honor, misstating the argument.  I never
said, >Liar= toCabout Mr.
Howell.  That=s just wrong.  Move to strike all that.@