**MEDICUS INSURANCE COMPANY,**
Appellant

v.

**Frederick TODD, II, M.D. d/b/a Arlington Neurological & Spine Association, Appellee.**

No. 05–11–01040–CV.

Court of Appeals of Texas,
Dallas.

May 10, 2013.

Brian Scott Martin, Thompson Coe Cousins & Irons, LLP, Jamie R. Carsey, Kevin Frank Risley, Houston, TX, for Appellant.

Michael Todd, Michael, Michael J. Todd, P.C. Law Office, Dallas, TX, Michael Scott Thomas, Houston, TX, for Appellee.

Before Justices BRIDGES, FITZGERALD and MYERS.

## OPINION

Opinion by Justice MYERS.

Medicus Insurance Company appeals the trial court's judgment that Medicus take nothing on its claim for declaratory judgment against Frederick Todd, II, M.D. d/b/a Arlington Neurological & Spine Association. Medicus brings three

issues [1] contending the trial court erred by (a) failing to submit Medicus's requested jury questions and instructions, and (b) by refusing to admit certain documents into evidence and then refusing to grant Medicus's motion for mistrial when those documents were viewed by the jurors. We affirm the trial court's judgment.

## BACKGROUND

Medicus provides medical malpractice insurance for physicians and health care practitioners. The company began selling insurance in September 2006. Its business plan is to keep its costs low by offering insurance at low premiums only to physicians with few claims, generally fewer than five claims.

Dr. Todd handled his malpractice insurance through his insurance broker, Larry Zimmer. In 2006, Dr. Todd had malpractice insurance with another company, and Zimmer suggested that Dr. Todd apply to Medicus, which had better coverage and lower premiums. When Dr. Todd applied for insurance in October 2006, Medicus did not ask him to fill out its nineteen-page application. Instead, it permitted him to submit only its two-page application and the Texas Standardized Credentialing Application, a form that physicians use to receive credentials to practice in a particular hospital. Dr. Todd sent Medicus a credentialing application he had signed on May 4, 2005. The credentialing applica-

tion asked if Dr. Todd had "ever been the subject of an investigation by any … licensing authority," and he checked the "No" box. In fact, Dr. Todd had been twice investigated by the Texas Medical Board for having three or more medical malpractice claims in a five-year period. The credentialing application also asked if he had "ever had any malpractice actions within the past 5 years (pending, settled, arbitrated, mediated or litigated[) ]," and appellant checked the "Yes" box and attached a description of four lawsuits filed against him between May 2000 and when he signed the application in May 2005.[2] Dr. Todd omitted one lawsuit from the list of claims filed between May 2000 and May 2005. Dr. Todd also failed to disclose another lawsuit filed between his signing the credentialing application and his applying to Medicus.

The underwriter for Medicus reviewing Dr. Todd's application recommended denying coverage "due to severe claims history." However, the chief underwriter and Medicus's president rejected the recommendation, and Medicus issued a one-year policy to Dr. Todd effective November 16, 2006.

In February 2007, Medicus sent Zimmer its official nineteen-page insurance application, prefilled with the information Medicus had about Dr. Todd. In the claims-history section, the application did not lim-

---

1. Medicus's appellant's brief contains four issues, with the first issue contending the trial court erred by denying Medicus's motion for directed verdict. Medicus withdrew the first issue from consideration after Dr. Todd pointed out in his appellee's brief that Medicus did not move for a directed verdict. Accordingly, we do not consider Medicus's first issue, and we address only the second, third, and fourth issues.

2. Medicus's two-page application asked "Has any claim or suit for alleged malpractice ever been brought against you, or are you aware of

circumstances that might reasonably lead to such a claim or suit? If 'Yes,' complete a claims supplement for each claim." Dr. Todd checked the "Yes" box, but he did not submit any claims information other than the five-year claims history requested in the credentialing application, and he did not fill in the blanks on Medicus's two-page application requesting "Total Number of Claims," the number that were "Open/Reserved," the number that were "Closed," or the request for a "Brief explanation of claims."

it its information to the preceding five years but asked, "Has any claim or suit for alleged malpractice ever been brought against you, or are you aware of circumstances that might reasonably lead to such a claim or suit?" The application was prefilled by Medicus listing five claims consisting of the four claims included on the credentialing application and a fifth claim for someone Dr. Todd testified was not a patient of his and who had not filed a claim against him. The application did not list the additional eight lawsuits that had been filed against Dr. Todd or the three letters from lawyers threatening suit, and neither Dr. Todd nor Zimmer added them to the application. However, Dr. Todd signed the application, declaring the information was true and correct.

When the policy came up for renewal in November 2007, Medicus sent Zimmer a prefilled application for Dr. Todd stating that the application "needs to be reviewed, modified if need be, and signed, dated and completed on pages 18 and 19 [the warranties and fraud-warnings pages requiring Dr. Todd's signature]." Like the February application, this application requested Dr. Todd's complete claims history and was prefilled with the same five claims included on the February application. Again, neither Zimmer nor Dr. Todd modified the claims list either to remove the claim that was not against Dr. Todd or to include the eight undisclosed lawsuits filed against Dr. Todd and the three letters threatening suit. Medicus renewed Dr. Todd's insurance for another year.

Dr. Todd testified he usually signed applications without reading them because he relied on Zimmer to make sure the applications contained the correct information. Zimmer testified he had presumed that Medicus's applications requested the same five-year claims history as the credentialing application. Zimmer stated he did not notice that Medicus's applications requested Dr. Todd's complete claims history.

After the 2007 renewal, Dr. Todd was named as a defendant in two more malpractice suits, and Medicus defended him and paid the policy limits to settle one of the suits. In November 2008, Medicus again renewed Dr. Todd's insurance but charged a higher premium. Medicus then received a copy of a letter from the plaintiff's attorney in one of the malpractice suits against Dr. Todd addressed to the attorney provided by Medicus to represent Dr. Todd. In the letter, the plaintiff's attorney stated that Dr. Todd had been a party to fifteen medical malpractice cases and two investigations by the Texas Medical Board. After investigating and discovering the undisclosed claims and Texas Medical Board investigations, Medicus notified Dr. Todd that Medicus "refuses to be bound by the policy" because of material misrepresentations in the insurance application. Medicus returned the premium to Dr. Todd and declared the policy cancelled.

Medicus then brought suit for declaratory judgment that the policy was void, that Medicus was not bound by the policy, and that it had no duty to defend or indemnify Dr. Todd for any claims against him. Dr. Todd filed a counterclaim for unjust enrichment and breach of contract alleging the insurance policy was a valid contract and that Medicus had manifested its intent to repudiate the policy. Both sides requested attorney's fees.

■ The case was tried before a jury. During its deliberations, the jurors sent a note to the trial court asking for the legal definition of the word "intent," and the court instructed them without objection that they had all the law and the evidence. Later, the jurors informed the court they were deadlocked "7–5," and the court instructed them to continue their delibera-

tions. The jurors then asked for instructions "on the procedure providing we are unable to reach a verdict," and the court instructed them with an "Allen charge." [3] Thereafter, ten jurors agreed on a verdict.[4]

The jury determined Medicus failed to prove by a preponderance of the evidence that Dr. Todd made a material false representation in an insurance application with Medicus with the intent to deceive Medicus and that was relied on by Medicus in issuing a policy of insurance to Dr. Todd. The jury also determined that Medicus failed to prove by a preponderance of the evidence that Zimmer and Dr. Todd colluded in not disclosing Dr. Todd's complete claims history for the purpose of obtaining insurance from Medicus.

During the trial, Medicus offered into evidence three exhibits that were applications in Dr. Todd's name for medical malpractice insurance with other insurers. The trial court refused to admit these exhibits. After the jury returned its verdict and was released but before the court signed the judgment, the court reporter contacted the attorneys and told them that the excluded exhibits had been included with the exhibits given to the jury for deliberation. Medicus filed a motion for mistrial asserting the jurors' consideration of the exhibits was jury misconduct. The motion was supported by affidavits from two of the jurors stating those exhibits had been discussed extensively by the jurors during deliberation and the exhibits "were an integral part of the jury deliberations." After a hearing, the trial court denied the motion for mistrial. Medicus raised this issue again in its motion for new trial, which the trial court denied.

The trial court rendered judgment that Medicus take nothing and awarded Dr. Todd attorney's fees of $86,446.84.

## MISREPRESENTATION IN AN INSURANCE APPLICATION

Medicus's second and third issues concern whether an insurer seeking to declare an insurance policy void because of material misrepresentations in the application for insurance must prove the insurance applicant intended to deceive the insurer. Medicus argues that an insurer seeking to have an insurance policy declared void due to misrepresentations in the application has two alternative remedies: the common-law remedy, in which the insurer must prove an insured intended to deceive the insurer, and the statutory remedy under section 705.004 of the Texas Insurance Code, which does not expressly require the insurer to prove the insured had the intent to deceive. *Compare Mayes v. Mass. Mut. Life Ins. Co.*, 608 S.W.2d 612, 616

---

**3.** "Allen charge" refers to an instruction from the court to a deadlocked jury encouraging the jurors to reach a verdict and avoid the need for a mistrial. The name derives from the decision in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

**4.** Medicus asserts in its appellant's brief and reply brief that the jurors had voted seven to five in its favor and that five jurors changed their votes after the court delivered the Allen charge. Nothing in the record supports Medicus's assertions that seven votes were in its favor or that five jurors changed their vote after the Allen charge. The record does not show which party the jurors favored at the

time of their first note about being deadlocked. The second note about deadlock does not show how the jurors were divided at that time. It might have been seven to five, but it could have been any division up to nine to three. Dr. Todd has filed a motion to strike these statements in Medicus's appellant's brief and reply brief. Although we deny the motion to strike, we do not give credence to factual assertions in briefs that are unsupported by the record. *See Unifund CCR Partners v. Weaver*, 262 S.W.3d 796, 797 (Tex.2008) (per curiam) (quoting *Marshall v. Hous. Auth. of San Antonio*, 198 S.W.3d 782, 789 (Tex. 2006)).

(Tex.1980), *with* Tex. Ins.Code Ann. § 705.004 (West 2009). Medicus asserts it brought suit under the statutory remedy, not the common-law remedy; therefore, it contends, it was not required to prove Dr. Todd intended to deceive it with the misrepresentations in the application concerning his claims history.

Section 705.004(a) of the Texas Insurance Code states an insurance policy cannot provide that false statements in the application for the policy make the policy void or voidable. However, "Subsection (a) does not apply if it is shown at trial that the matter misrepresented: (1) was material to the risk; or (2) contributed to the contingency or event on which the policy became due and payable." Ins. § 705.004(b).[5] The statute does not expressly require, and never has required,

the insurer to prove the insured's intent to deceive.[6]

Although the statute does not expressly require the insurer prove the insured's intent to deceive, the supreme court has imposed that requirement. In 1933, in a case involving misrepresentations in an application for life insurance, the commission of appeals quoted the statute, article 5043 of the 1925 Texas Revised Civil Statutes, and also stated,

> The great weight of authority sustains the rule that under the provisions of these statutes a misrepresentation, or breach of warranty, by the insured, to avoid the policy, must be willful, or made fraudulently with intent to deceive.... It is a settled rule in this state that false statements to avoid a policy must have been willful and made with a design to deceive or defraud.

**5.** The statute provides:

> (a) An insurance policy provision that states that false statements made in the application for the policy or in the policy make the policy void or voidable:
> (1) has no effect; and
> (2) is not a defense in a suit brought on the policy.
> (b) Subsection (a) does not apply if it is shown at trial that the matter misrepresented:
> (1) was material to the risk; or
> (2) contributed to the contingency or event on which the policy became due and payable.
> (c) It is a question of fact whether a misrepresentation made in the application for the policy or in the policy itself was material to the risk or contributed to the contingency or event on which the policy became due and payable.
>
> Ins. § 705.004.

**6.** This statute, in nearly identical form, was first passed by the Texas Legislature in 1903. The statute provided:

> That any provision in any contract or policy of insurance issued or contracted for in this State, which provides that the answers or statements made in the application for such

contract, or in the contract of insurance, if untrue or false, shall render the contract or policy void or voidable, shall be of no effect and shall not constitute any defense to any suit brought upon such contract, unless it be shown upon the trial thereof that the matter or thing misrepresented was material to the risk or actually contributed to the contingency or event on which said policy became due and payable, and whether it was material and so contributed in any case, shall be a question of fact to be determined by the court or jury trying such case.

Act Approved Mar. 27, 1903, 28th Leg., R.S., ch. 69, § 1, 1903 Tex. Gen. Laws 94, 94 (codified as articles 3096aa, 4947, and 5043 in the 1895, 1911, and 1925 codifications of the Texas Revised Civil Statutes, and article 21.16 of the Texas Insurance Code of 1951), *repealed by* Act of May 22, 2003, 78th Leg., R.S., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 3611, 4138. The statute, in its current form, was passed in 2003 and took effect April 1, 2005. *See* Act of May 22, 2003, 78th Leg., R.S., ch. 1274, § 2, sec. 705.004, § 28, 2003 Tex. Gen. Laws 3611, 3753, 4139. The inclusion of this provision in the current codification of the Insurance Code was without intent to substantively change the law. Ins. § 30.001(a).

*Am. Cent. Life Ins. Co. v. Alexander,* 56 S.W.2d 864, 866 (Tex.Com.App.1933) (citation omitted).

Although the statute permitting an insurer to include language in a policy authorizing it to declare the policy void for misrepresentations in the application does not require the misrepresentation be made with the intent to deceive, the supreme court has continued to impose that requirement. *See Union Bankers Ins. Co. v. Shelton,* 889 S.W.2d 278, 282 (Tex.1994); *Wash. v. Reliable Ins. Co.,* 581 S.W.2d 153, 159, 160 (Tex.1979); *Allen v. Am. Nat'l Ins. Co.,* 380 S.W.2d 604, 607–608 (Tex. 1964); *Clark v. Nat'l Life & Accident Ins. Co.,* 145 Tex. 575, 200 S.W.2d 820, 822–23 (1947); *Great S. Life Ins. Co. v. Doyle,* 136 Tex. 377, 151 S.W.2d 197, 201 (1941); *Colo. Life Co. v. Newell,* 78 S.W.2d 1049, 1051 (Tex.Civ.App.-El Paso 1935, writ ref'd).

In 1980, in *Mayes v. Massachusetts Mutual Life Insurance Co.,* which concerned an insured's false statements about medical history in a life-insurance application, the supreme court stated:

> It is now settled law in this state that these five elements must be pled and proved before the insurer may avoid a policy because of the misrepresentation of the insured: (1) the making of the representation; (2) the falsity of the representation; (3) reliance thereon by the insurer; (4) the intent to deceive on the part of the insured in making same; and (5) the materiality of the representation.

*Mayes,* 608 S.W.2d at 616.

Fourteen years later, in a health-insurance case, the supreme court quoted the five elements in *Mayes* and stated, "an insured's intent to deceive must be shown in order for an insurance company to suc-

cessfully raise a defense of misrepresentation on the basis of a false statement made by the insured in the application for *any* type of insurance." *Union Bankers Ins. Co. v. Shelton,* 889 S.W.2d 278, 282 (Tex. 1994) (emphasis added). Besides life and health insurance, the courts have also required proof of an insurance applicant's intent to deceive in many other types of insurance. *See, e.g., Tex. Farm Bureau Mut. Ins. Co. v. Rogers,* 351 S.W.3d 103, 107 (Tex.App.-San Antonio 2011, pet. denied) (homeowner's insurance); *Am. Nat'l Ins. Co. v. Paul,* 927 S.W.2d 239, 242 (Tex. App.-Austin 1996, writ denied) (credit disability insurance); *Progressive Cnty. Mut. Ins. Co. v. Boman,* 780 S.W.2d 436, 439 (Tex.App.-Texarkana 1989, no writ) (motorcycle insurance); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.,* 780 S.W.2d 417, 425 (Tex.App.-Texarkana 1989) (aircraft insurance), *aff'd,* 811 S.W.2d 552 (Tex.1991); *Gen. Am. Life Ins. Co. v. Martinez,* 149 S.W.2d 637, 639 (Tex. Civ.App.-El Paso 1941, writ dism'd judgm't cor.) (disability insurance).

Medicus's argument that there are alternative statutory and common-law causes of action for an insurer seeking to declare a policy void for misrepresentations in the application is based on the following quotation from the supreme court's opinion in *Shelton,* "The proposition that an insured's intent to deceive is likewise required is well established *in the common law of this state." Shelton,* 889 S.W.2d at 281 (emphasis added).

Medicus's argument takes the statement out of context. The supreme court first determined that a special statute concerning misstatements in health-insurance applications did not apply to the case.[7] It then stated,

---

**7.** *Shelton* concerned untrue statements in an application for health insurance. Under article 3.70–3(A)(2) of the Insurance Code of

1951 (section 1201.208(a) of the current Insurance Code), when the time between the issuance of the policy and the insurer's at-

Thus, we must examine both the relevant statutes and the common law to determine whether the insurer must prove the insured's intent to deceive in order to successfully raise a defense of misrepresentation to a breach of insurance contract action. By statute, a misrepresentation in an application for any type of insurance must be material in order to avoid the policy. *See* Tex. Ins. Code Ann. art. 21.16 (Vernon 1981) [now Ins. § 705.004]. The proposition that an insured's intent to deceive is likewise required is well established in the common law of this state.... All of the cases cited by the court of appeals and Mr. Shelton properly stand for the proposition that, in Texas, an insured's intent to deceive must be shown in order for an insurance company to successfully raise a defense of misrepresentation on the basis of a false statement made by the insured in the application for any type of insurance.

*Shelton,* 889 S.W.2d at 281–82. Under *Shelton,* there is only one cause of action for rescinding a policy due to misrepresentations in the application; that is, by application of both the relevant statutes and the common law, which includes the insured's intent to deceive. Medicus cites no case holding that an insurance company need not prove intent to deceive to rescind a policy due to misrepresentations in the insurance application. Nor does Medicus

refer us to any special statute for medical malpractice insurance that does not require the insurer to prove the insurance applicant's intent to deceive.

■ Section 705.004, in its different codifications, is now 110 years old. Although the statute has never expressly required the insurer to prove the insured intended to deceive the insurer with a misrepresentation in the policy application, the courts of Texas have consistently held that an insurer may not rescind a policy due to a misrepresentation in an insurance application unless the insurer proves the insured intended to deceive the insurer with the misrepresentation. We cannot vary from this long history of case law imposing this duty upon insurers. We conclude "the intent to deceive on the part of the insured in making" a misrepresentation in an application for insurance is an element the insurer must prove to obtain a declaratory judgment that a policy is void due to the misrepresentations.

## JURY CHARGE

■ In its second issue, Medicus contends the trial court erred by not submitting its requested jury question on section 705.004 of the Texas Insurance Code. We review a trial court's submission of jury questions for an abuse of discretion. *Dallas City Limits Prop. Co., L.P. v. Austin Jockey Club, Ltd.,* 376 S.W.3d 792, 801 (Tex.App.-Dallas 2012, pet. denied); *Janga*

tempt to cancel the policy due to misstatements in the application is more than two years (September 19, 1969 to the present) or three years (June 6, 1955 to September 18, 1969), the policy cannot be cancelled due to the misstatement unless the misstatement was fraudulent. Act of May 24, 1955, 54th Leg., R.S., ch. 397, § 3, 1955 Tex. Gen. Laws 1044, 1045–46, *amended by,* Act of Sept. 8, 1969, 61st Leg., 2d C.S., ch. 11, § 1, 1969 Tex. Gen. Laws 118, 118, *repealed by* Act of May 22, 2003, 78th Leg., R.S., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 3611, 4138 (current

version at Tex. Ins.Code § 1201.208(a) (West 2009)). In *Shelton,* the insurer attempted to cancel the policy less than two years after its issuance. *Shelton,* 889 S.W.2d at 279. The supreme court stated that when less than two years has expired, as was the case in *Shelton,* article 3.70–3(A)(2) (now Texas Insurance Code section 1201.208(a)) requiring the misstatement be fraudulent does not apply. In that situation, the statutes and case law governing misstatements in insurance applications apply. *Id.* at 281.

*v. Colombrito,* 358 S.W.3d 403, 408 (Tex. App.-Dallas 2011, no pet.). The trial court's failure to submit a jury question that is not "in substantially correct wording" is not reversible error. TEX.R. CIV. P. 278; *Dick's Last Resort of West End, Inc. v. Market/Ross, Ltd.,* 273 S.W.3d 905, 914 (Tex.App.-Dallas 2008, pet. denied).

The trial court submitted the following question on the issue of misrepresentation in the application:

> Did Dr. Todd, in an application for an insurance policy with Medicus or in a policy itself with Medicus, make any false representation, that was material to the risk, with the intent to deceive Medicus, that was relied upon by Medicus in issuing a policy of insurance to Dr. Todd?

Medicus requested the court submit the following question:

> Were there one or more misrepresentations in the application submitted by Dr. Todd to Medicus in 2007 that (1) were material to the risk of insuring Dr. Todd and (2) contributed to the issuance of the Medicus Policy under which Dr. Todd later sought coverage?

The trial court refused to submit this question. The question omits the required element of the insured's intent to deceive in making the misrepresentation. *See Shelton,* 889 S.W.2d at 282; *Mayes,* 608 S.W.2d at 616. We conclude Medicus's requested jury question was not in substantially correct wording and that the trial court did not abuse its discretion by refusing to submit the question. We overrule Medicus's second issue.

In its third issue, Medicus contends the trial court erred by failing to submit Medicus's requested instructions "that would have provided important guidance on the issue of intent to deceive." Rule 277 requires the trial court to "submit such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX.R. CIV. P. 277. We do not disturb the trial court's decision on which instructions to submit to the jury absent an abuse of discretion. *Shupe v. Lingafelter,* 192 S.W.3d 577, 579 (Tex. 2006); *Latham v. Burgher,* 320 S.W.3d 602, 607 (Tex.App.-Dallas 2010, no pet.). A trial court has more discretion when submitting instructions than when submitting questions. *Wal-Mart Stores, Inc. v. Middleton,* 982 S.W.2d 468, 470 (Tex.App.-San Antonio 1998, pet. denied). When a trial court refuses to submit a requested instruction, the question on appeal is whether the request was reasonably necessary to enable the jury to render a proper verdict. *Shupe,* 192 S.W.3d at 579. The omission of an instruction is reversible error only if the omission probably caused the rendition of an improper judgment. *Id.; see* TEX.R.APP. P. 44.1(a). The trial court's refusal to submit a requested definition or instruction is not reversible error unless a substantially correct definition or instruction has been requested in writing by the party complaining of the judgment. TEX.R. CIV. P. 278.

The trial court's instructions addressed the elements of materiality and reliance, but not intent to deceive.[8] Medi-

---

8. The trial court submitted the following instructions with the jury question on the *Mayes* elements:

> You are instructed that a representation by Dr. Todd is material if Medicus would not have accepted the risk of the insurance policy but for such representation.

> You are instructed that actual knowledge of the misrepresentation on the part of the insurer will prevent the insurer from showing that it relied on a misrepresentation made by the insured.

> You are instructed that the materiality of the risk must be viewed as of the time of the issuance of the policy at issue.

cus requested that the trial court instruct the jury that "[a]n intent to deceive may be proven by circumstantial evidence." The trial court could have determined this instruction was not necessary because the charge instructed the jury, "A fact may be established by direct or circumstantial evidence." We conclude the trial court did not abuse its discretion in refusing to submit the instruction.

 Medicus also asserts the trial court should have submitted this instruction: "The utterance of a known false statement, made with intent to induce action, is equivalent to an intent to deceive." The charge must define words and phrases that have distinct legal meanings. *Barnett v. Coppell N. Tex. Court, Ltd.,* 123 S.W.3d 804, 826 (Tex.App.-Dallas 2003, pet. denied). However, words of ordinary meaning, readily understandable by the average person, need not be defined in the charge. *Standley v. Sansom,* 367 S.W.3d 343, 350 (Tex.App.-San Antonio 2012, pet. denied). Medicus does not argue that the phrase "intent to deceive" had a distinct legal meaning or that the ordinary meaning of the phrase did not apply. Accordingly, we conclude Medicus has not shown the trial court abused its discretion in refusing to submit this instruction.

 Medicus also contends the trial court should have submitted this instruction: "You are instructed that where an application for insurance is attached to and made a part of the policy and is accepted and ratified by the insured, the insured is conclusively presumed to have knowledge of its contents and to have ratified any false statements therein." *See Mayes,* 608 S.W.2d at 617. This instruction goes to the element of whether Dr. Todd made a misrepresentation. *See Sharp v. Lincoln*

*Am. Life Ins. Co.,* 752 S.W.2d 673, 675 (Tex.App.Corpus Christi 1988, writ denied). The presumption does not concern whether the misrepresentation was made with the intent to deceive. *See id.* Medicus has not shown the instruction "would have provided important guidance on the issue of intent to deceive."

Having concluded Medicus has not shown the trial court erred by refusing appellant's requested instructions, we overrule Medicus's third issue.

## ADMISSION OF EXHIBITS

In its fourth issue, Medicus contends the trial court erred by (a) excluding from evidence three exhibits offered by Medicus and (b) denying a mistrial after those excluded exhibits were submitted to the jury. The exhibits were applications in Dr. Todd's name submitted to other insurance companies.

### Exclusion of Evidence

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Northborough P'ship v. State,* 66 S.W.3d 213, 220 (Tex. 2001); *May v. Buck,* 375 S.W.3d 568, 573 (Tex.App.-Dallas 2012, no pet.). Under an abuse of discretion standard, we are not free to substitute our judgment for the trial court's judgment. *Bowie Mem. Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002). A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985).

 Plaintiff's Exhibit 11A was an application to Advocate MD, a medical mal-

You are instructed that a misrepresentation in an application for professional liability insurance is not material to the risk simply

because, had the true facts been known, the insurer would have charged a higher premium for the policy issued.

practice insurer, in October 2006, about the same time Dr. Todd applied to Medicus. The Advocate MD application asked about "claims information." The application defined "claims" as including "intent to sue, written demand from patients or lawyer, incidents, withdrawn, settled, etc." The application asked for "Total Number of Claims" and was answered "4," which was consistent with the answer on the credentialing application submitted to Medicus. Unlike the credentialing application, the Advocate MD application did not limit its claims-information request to the preceding three years. By October 2006, Dr. Todd had been a party in twelve lawsuits and had been threatened with suit four other times.

Plaintiff's Exhibit 51 was an application for insurance from American Physicians Insurance Agency, Inc. on October 18, 2001. That application asked, "Are you now or have you ever been involved, directly or indirectly in a claim, potential claim, or suit arising out of the rendering or failing to render professional services?" The box marked "Yes" is checked and the question "If yes, how many" is answered "9." By October 2001, Dr. Todd had been a party to ten lawsuits and had received one other letter threatening suit.

Plaintiff's Exhibit 52 was an application for insurance from American Physicians Insurance Exchange on April 13, 2009. The application asked, "Are you now or have you ever been involved, directly or indirectly, in a claim, potential claim, or suit arising from the rendering of, or failure to render professional services?" The answer "Yes" is circled and the question "If yes, how many" is answered "14." At that time, Dr. Todd had been a party in fourteen lawsuits; he also had received four other threats of lawsuits from patients, but no suits were filed by those patients against him and the limitations

period for filing suit on those claims had expired. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.251(a) (West 2011).

Dr. Todd testified he signed Plaintiff's Exhibit 52. However, he testified he had never seen Plaintiff's Exhibits 11A and 51 and that the signatures on those documents were not his. He also testified that neither Zimmer nor anyone at his office had authority to sign his name to insurance applications. Zimmer testified that he signed Dr. Todd's name without authority to Plaintiff's Exhibit 11A to get an insurance quote for Dr. Todd. Zimmer also testified that Dr. Todd did not sign Plaintiff's Exhibit 51. The trial court refused to admit the three exhibits "based on the record."

Medicus argues the three exhibits were admissible because they "would have provided compelling evidence that Todd was never honest about his malpractice history when seeking to obtain malpractice coverage" and would permit the jury to "infer that Todd had an intent to deceive Medicus in order to induce Medicus to issue a malpractice policy to Todd." Plaintiff's Exhibits 11A and 51 do not support such an inference because both Dr. Todd and Zimmer testified that Dr. Todd did not sign them or authorize their signing. Accordingly, the court could reasonably conclude the documents did not tend to show any intent to defraud by Dr. Todd. We conclude the trial court did not abuse its discretion by refusing to admit Plaintiff's Exhibits 11A and 51.

Plaintiff's Exhibit 52 was signed by Dr. Todd, but unlike the applications with Medicus and the other companies, the number of claims disclosed, fourteen, equaled the number of lawsuits filed against Dr. Todd. The claims history may have omitted the four threatened lawsuits; however, the evidence shows no suit was ever filed by the patients on those four claims,

no funds were paid to the claimants, and those claims were outside the statute of limitations when Dr. Todd signed Plaintiff's Exhibit 52. *See* CIV. PRAC. § 74.251(a). The trial court could have concluded the probative value from the introduction of this document and the questioning of witnesses about it would be substantially outweighed by the danger of confusion of the issues or misleading the jury. *See* TEX.R. EVID. 403. We conclude Medicus has not shown the trial court abused its discretion by refusing to admit Plaintiff's Exhibit 52.

**Jury's Review of Excluded Exhibits**

 Medicus also argues the trial court abused its discretion by denying a mistrial after the parties and the court learned that Plaintiff's Exhibits 11A, 51, and 52 had been sent to the jury room with the other exhibits and reviewed by the jurors during their deliberation. The parties and the court did not learn of this mistake until after the jury returned its verdict and been dismissed. Medicus filed a motion for mistrial with the affidavits of two of the jurors attached. Both affidavits stated, "During our deliberations, we reviewed the above mentioned applications [Plaintiff's Exhibits 11A, 51, and 52] and extensively discussed the information contained in said applications in relation to the elements of misrepresentation and they were an integral part of the jury deliberations."

 We review the trial court's denial of a motion for mistrial under an abuse of discretion standard. *Deese v. Combined Specialty Ins. Co.,* 352 S.W.3d 864, 866 (Tex.App.-Dallas 2011, no pet.). Jury misconduct includes outside influence on the jurors. *See Golden Eagle Archery, Inc. v. Jackson,* 24 S.W.3d 362, 369 (Tex. 2000); *Losier v. Ravi,* 362 S.W.3d 639, 646

(Tex.App.-Houston [14th Dist.] 2009, no pet.). "Outside influence" means:

a force external to the jury and its deliberations. Outside influence does not include information acquired by a juror and communicated to the others between the time the trial court instructs the jury and the time it renders a verdict, even where the information is not in evidence, and is unknown to the jurors before trial. Outside influence, in the form of information not in evidence, must come from a *non-juror.*

*Rosell v. Cent. W. Motor Stages, Inc.,* 89 S.W.3d 643, 660 (Tex.App.-Dallas 2002, pet. denied) (quoting *Durbin v. Dal–Briar Corp.,* 871 S.W.2d 263, 272 (Tex.App.-El Paso 1994, writ denied)).

 To warrant a new trial for jury misconduct, the movant must establish (1) that the misconduct occurred, (2) that it was material, and (3) that it probably caused injury. *Golden Eagle,* 24 S.W.3d at 372. Whether misconduct occurred is a question of fact for the trial court. *Id.; Rosell,* 89 S.W.3d at 660. Misconduct justifies a new trial only if it reasonably appears from the record that "injury probably resulted to the complaining party." *Rosell,* 89 S.W.3d at 660–61 (quoting *Pharo v. Chambers Cnty., Tex.,* 922 S.W.2d 945, 950 (Tex.1996) (quoting TEX.R. CIV. P. 327(a))). "To show probable injury, there must be some indication in the record that the alleged misconduct most likely caused a juror to vote differently than he 'would otherwise have done on one or more issues vital to the judgment.'" *Id.* at 661 (quoting *Pharo,* 922 S.W.2d at 950 (quoting *Redinger v. Living,* 689 S.W.2d 415, 419 (Tex.1985) (quoting *Mrs. Baird's Bread Co. v. Hearn,* 157 Tex. 159, 300 S.W.2d 646, 649 (1957)))). "Determining the existence of probable injury is a question of law." *Id.* (quoting *Pharo,* 922 S.W.2d at 950.)

In this case, the parties disagree on whether the exhibits constituted an "outside influence" or "jury misconduct." However, even if the jury's consideration of the excluded exhibits was jury misconduct, we conclude it does not reasonably appear from the record that Medicus suffered probable injury.

Medicus argues the record shows the jury's consideration of the exhibits caused it probable injury because two jurors, both of whom were among the ten jurors who determined the verdict, stated in affidavits that the exhibits were "extensively discussed" in their consideration of the elements of misrepresentation and that the exhibits "were an integral part" of their deliberations. Although the jurors' statements show the exhibits were an important part of the deliberations, those statements do not indicate a likelihood that the exhibits caused any juror to vote differently than the juror otherwise would have voted without the exhibits.

Medicus also argues probable injury because the jury could have concluded the excluded insurance applications supported Dr. Todd's position that he did not intentionally misrepresent his claims history with the intent to deceive Medicus: "[the] repeated applications for insurance that omitted the vast majority of Dr. Todd's prior malpractice history only showed that Dr. Todd was sloppy but not dishonest." Medicus also argues the excluded applications could have allowed the jurors to conclude "that since the other applications also failed to disclose Todd's full malpractice history, there was nothing irregular or improper in the misrepresentations in the application Todd submitted to Medicus." The problem with this position is Plaintiff's Exhibit 52, in which Dr. Todd disclosed the existence of fourteen malpractice claims and, at that time, he had been sued fourteen times for malpractice. Unlike Dr.

Todd's other applications, Plaintiff's Exhibit 52 did not, as appellant asserts, "omit[ ] the vast majority of Dr. Todd's malpractice history." Instead, it shows Dr. Todd knew how to disclose his complete lawsuit history, if not his history of threatened but unfiled lawsuits. Although the record does not conclusively establish that the excluded applications would not have affected any juror's vote, there is no "indication in the record that the alleged misconduct *most likely* caused a juror to vote differently than he 'would otherwise have done on one or more issues vital to the judgment.'" *Rosell*, 89 S.W.3d at 661 (emphasis added) (quoting *Pharo*, 922 S.W.2d at 950 (quoting *Redinger v. Living*, 689 S.W.2d at 419 (quoting *Mrs. Baird's Bread Co.*, 300 S.W.2d at 649))).

We conclude the trial court did not abuse its discretion by denying Medicus's motion for mistrial. We overrule Medicus's fourth issue.

## CONCLUSION

We affirm the trial court's judgment.