**AFFIRMED; Opinion Filed March 20, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01615-CV

## IN THE INTEREST OF L.B. AND A.B., CHILDREN,

**On Appeal from the 15th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. FA-12-0485**

## MEMORANDUM OPINION
Before Justices O'Neill, Myers, and Brown
Opinion by Justice Myers

Appellant appeals the trial court's judgment terminating his parental rights to his children, L.B. and A.B. Appellant brings six issues on appeal contending (a) the trial court erred by allowing the intervenor to call an expert witness out of order; (b) the evidence was legally and factually insufficient to support the jury's findings on the statutory grounds for termination; and (c) the evidence was legally and factually insufficient to support the jury's finding that termination of appellant's parental rights was in the best interest of the children. We affirm the trial court's judgment.

### BACKGROUND

The trial in this case was held the week after appellant's trial for the murder of Sarah Swaim, the children's mother. The judgment in that case states the jury found appellant guilty of murder under section 19.02(b)(1) of the Texas Penal Code and assessed his punishment at life imprisonment and a fine of $10,000. That judgment is on appeal.

L.B. was born in January 2011. On April 4, 2011, L.B. was removed by the Texas Department of Family and Protective Services (the Department) in Rockwall from appellant and Swaim's possession following an altercation. Appellant and Swaim had been doing drugs. When they were coming down from the drugs, appellant and Swaim got into an argument. Appellant picked up L.B. and took her to the car. Swaim followed, arguing with appellant. Swaim attempted to hit appellant but missed, hitting L.B. The police were called, and both appellant and Swaim were arrested. The Department placed L.B. with Swaim's grandmother, Judy Hunnicutt, where she remained until January 2013. During that time, L.B. progressed well in Hunnicutt's care. The Department set up services for appellant and Swaim, including parenting classes, drug treatment, drug assessment, random drug testing, counseling, and visitation with L.B. Appellant missed some of the drug tests and visitations, but he completed the parenting classes, drug treatment, drug assessment, and counseling sessions. Appellant passed all the drug tests he took, including a hair-follicle test. The trial court in Rockwall returned L.B. to appellant and Swaim's possession in January 2013.

A.B. was born in February 2012. He was removed from appellant and Swaim's possession in October 2012 due to concerns about the condition of the home, neglectful supervision, the history of domestic violence and drug use, and appellant's and Swaim's failure to comply with the Department's services after L.B. was removed. A.B. was placed with appellant's half-sister, Ashley Bowser, and her husband. Witnesses testified A.B. was well cared for by the Bowsers.

On the evening on February 7, 2013, appellant called the police and told them Swaim was missing. He told the officers that on the night of February 6, 2013, he and Swaim had been drinking shots of vodka when they began to argue. Appellant told the officers he did not want to

argue with her, and he went to bed. A short time later, he heard the door slam, and he never saw Swaim again.

Appellant's employer found Swaim's body wrapped in garbage bags and rolled in carpet on a pile of trash to be burned on the employer's property. Appellant's employer and another employee testified they saw appellant unloading the roll of carpet from his van on the morning of February 7, 2013. When they heard that Swaim was missing, they decided to check the roll of carpet, and they found Swaim's body. The police then arrested appellant for Swaim's murder.

At his criminal trial, appellant testified to different events than he related to the police on February 7. Appellant testified he and Swaim had been consuming large quantities of alcohol. Appellant was in the kitchen at the front of the house and Swaim was in the bedroom at the back of the house when appellant heard a crash in the bedroom. When appellant got to the bedroom, he saw Swaim lying on the floor between the bed and the wall, bleeding from her mouth. Appellant told Swaim to be quiet so she would not awaken L.B., who was in a crib next to the bed. Appellant then went to bed. When appellant awoke the next morning, Swaim was cold and stiff. Appellant attempted to awaken her and he performed CPR, but Swaim did not revive. Appellant carried her body out of the bedroom, wrapped her in garbage bags, rolled her up in some old carpet, and took her to his employer's trash pile. Two-year-old L.B. had been in her crib in the bedroom with appellant and Swaim. Appellant did not want to leave her alone at the house, so he took her with him when he drove with Swaim's body in the back of the van to the trash pile where he left Swaim's body.

The medical examiner testified that Swaim "died as a result of strangulation and blunt force injury." Swaim's body had bruises in different stages of healing on her head, neck, tongue, face, the top half of her body, her legs, her pubic area, and at the opening of her vagina. The bruises on her pubic area and vagina were the result of blunt force injury and could not have

–3–

been caused by a fall. Swaim also had bruising in the spacing between the ribs on both sides of her chest, a fresh rib fracture in the area of the bruising, and an old rib fracture. Swaim also had defensive injuries, bruising in her hands. Swaim's liver was torn, which could only have been caused by the infliction of great force. Swaim's blood alcohol level was .328, but Swaim did not die of alcohol poisoning.

Many witnesses testified to the tumultuous nature of appellant and Swaim's relationship. Neighbors testified to hearing them screaming at each other and throwing things in the middle of the night. A neighbor testified that one of the incidents of appellant and Swaim screaming at each other in the middle of the night occurred when A.B. was at the home. The neighbors would call the police, but appellant and Swaim would become silent when the police arrived and would not open the door. One neighbor testified she saw appellant pulling Swaim by the hair toward the house "cussing her out" while Swaim, who was about eight months pregnant at the time, was struggling and screaming.

Appellant's stepfather, Mark Watkins, who lived in the same neighborhood, testified that Swaim walked to his house one night carrying A.B. Swaim was hysterical, scared, and so intoxicated Watkins had difficulty understanding her. Appellant drove up soon after and was also intoxicated and incoherent. Watkins told appellant to leave the child with him until the next morning, but appellant took the baby away from Swaim and, still intoxicated, drove back home with the child.

During his criminal trial, appellant also testified that he, his former girlfriend, and Swaim were in a hotel room using marijuana, cocaine, and alcohol while caring for appellant's and the former girlfriend's two children. An incident occurred and the police were called. Appellant was arrested on an outstanding warrant. When he was released from jail, Swaim told him he had

head butted her. Appellant testified at the criminal trial that he did not remember the details because of the alcohol and drug use.

In this trial, appellant was asked about his use of drugs and alcohol, his physical abuse of Swaim and his former girlfriends, his screaming profanities at Swaim, and his testimony at the criminal trial, and he refused to answer, invoking the Fifth Amendment privilege not to incriminate himself.

Witnesses testified that Swaim admitted she and appellant had the children in their care while using cocaine and alcohol. The witnesses testified Swaim made these statements in appellant's presence and that appellant did not contradict her. However, other witnesses testified that appellant was a good and loving father and took good care of his children.

After Swaim's murder and appellant's arrest, the Department returned L.B. to Hunnicutt's possession. Hunnicutt testified that when L.B. was returned to her, the two-year-old child would "cuss"; was no longer potty trained; "screamed for bloody murder" when Hunnicutt put her to bed; would hit Hunnicutt all over with her bottle; and would wrap her dolls up, lay them face down, and hit them.[1] L.B. has been going to counseling, and her behavior has improved. Hunnicutt testified that if appellant's parental rights are terminated, she plans to seek adoption of L.B.

Bowser testified that she and her husband intend to seek adoption of A.B. if appellant's parental rights are terminated.

---

[1] Hunnicut testified that when she put L.B. to bed the first night after being returned to her following Swaim's murder and appellant's arrest,

> [L.B.] screamed for bloody murder until I just couldn't handle it. I mean I never had seen her act like that before. So I told everybody that I would lay down on the bed with her. And I did and she had been almost off the bottle before she went back. She was almost toilet trained. When she came back she wanted a bottle and a blankey and she wasn't toile[t] trained. But she reached over and she slapped me in the face. I said, "[L.B.], what did you do that for?" She did it again. She took her bottle and she hit me from one end of my body to the other with this bottle and continued to do it until I picked her up and I held her for a while and she calmed down. But she did that almost every night for three or four weeks. I mean I was so upset about it that one night I laid there in bed and cried because she had to have seen that type of action because I don't cuss like that. And when she gets her dolls she wraps them up and lays them face down and she will hit them or she would. She doesn't do that any more.

After Swaim's murder and appellant's arrest, the Department filed a petition for termination of appellant's parental rights. Hunnicutt and Dina Derebery, who was appellant's mother and the children's paternal grandmother, each filed petitions in intervention. Hunnicutt asked that appellant's parental rights be terminated and that the Department be appointed the children's permanent managing conservator or, alternatively, that she be appointed their permanent managing conservator. Derebery's petition in intervention asked that she be appointed sole managing conservator of the children.

The jury found from clear and convincing evidence that appellant knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being; engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being; was convicted of the murder of the children's other parent under section 19.02 or 19.03 of the Texas Penal Code; and knowingly engaged in criminal conduct that resulted in his conviction for an offense and confinement or imprisonment and inability to care for the children for not less than two years from the date of the filing of the petition. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E), (Q), and (T)(i) (West Supp. 2013). The jury also found by clear and convincing evidence that termination of the parent-child relationship between appellant and the children was in the best interest of the children. *See id.* § 161.001(2). The jury determined that Hunnicutt should be appointed the children's managing conservator and that appellant and Derebery should not be appointed possessory conservators of the children.

**TAKING WITNESS OUT OF ORDER**

In his first issue, appellant contends the trial court erred by allowing Hunnicutt to call the medical examiner out of order during the Department's case in chief without good cause stated on the record.

–6–

During the Department's case in chief, the Department called the medical examiner, who worked in Collin County, and who had performed the autopsy on Swaim. Appellant objected on the ground that the Department did not properly designate the medical examiner as an expert witness in response to appellant's requests for disclosure under rule of civil procedure 194. *See* TEX. R. CIV. P. 194.2(f). Hunnicutt's counsel told the court that she had designated the medical examiner as an expert witness and asked to call the witness out of order. Appellant objected to Hunnicutt's request to call the medical examiner out of order. The trial court granted the request, stating that the court would not require the medical examiner to travel a second day.

Rule of civil procedure 265 provides that unless the trial court otherwise directs for good cause stated in the record, the party with the burden of proof on the whole case presents its evidence first, the adverse party goes second, and intervenors and other parties go third. *See* TEX. R. CIV. P. 265. The order in which evidence is presented is a matter within the trial court's discretion. *Baker v. Sturgeon*, 361 S.W.2d 610, 614 (Tex. Civ. App.—Texarkana 1962, no writ); *Plunkett v. Simmons*, 63 S.W.2d 313, 315 (Tex. Civ. App.—Waco 1933, writ dism'd). A trial court abuses its discretion only when it acts arbitrarily or unreasonably, that is, when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *Medicus Ins. Co. v. Todd*, 400 S.W.3d 670, 681 (Tex. App.—Dallas 2013, no pet.) (citing *Downer*).

Appellant asserts there was no finding of good cause other than the court's concern for the medical examiner's schedule. However, appellant does not explain why this finding did not constitute good cause. Moreover, appellant does not explain how any error in allowing Hunnicutt to call the medical examiner constituted reversible error, that is, error that probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1); *see also In re Estate of Marley*, 390 S.W.3d 421, 425 (Tex. App.—El Paso 2012, pet. denied) ("As the

appellant, Charla bears the burden to establish that the trial court committed reversible error."). If the trial court had sustained appellant's objection and required Hunnicut to call the medical examiner after appellant presented his case in chief, nothing in the record shows the medical examiner would not have testified or would have testified differently.

We conclude appellant has failed to establish that the trial court abused its discretion and committed reversible error by allowing Hunnicutt to call the medical examiner out of order. We overrule appellant's first issue.

## TERMINATION OF PARENTAL RIGHTS

Section 161.001 of the Texas Family Code authorizes a court to order termination of parental rights if two elements are established by clear and convincing evidence. *See* FAM. § 161.001(1), (2). First the court must find the parent engaged in one of the acts or omissions itemized in subsection (1). Second, the court must find that termination of the parent-child relationship is in the best interest of the child. *Id.* Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2008).

### Standard of Review

In reviewing the legal sufficiency of the evidence in a parental termination case,

a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. This does not mean that a court must disregard *all* evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

*In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). When reviewing the factual sufficiency of the evidence, we "give due consideration to evidence the factfinder could reasonably have found to be clear and convincing." *Id.* "[T]he inquiry must be 'whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations.'" *Id.* (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.O.A.* (quoting *In re J.F.C.*, 96 S.W.3d at 267).

### Statutory Ground for Termination

One of the statutory grounds for termination is:

> that the parent . . . has been convicted of: (i) the murder of the other parent of the child under Section 19.02 or 19.03, Penal Code, or under a law of another state, federal law, the law of a foreign country, or the Uniform Code of Military Justice that contains elements that are substantially similar to the elements of an offense under Section 19.02 or 19.03, Penal Code . . . .

*Id.* § 161.001(1)(T)(i).

In his second issue, appellant contends the evidence was legally and factually insufficient to establish that appellant was "finally convicted" of the murder of the other parent under sections 19.02 or 19.03 of the penal code. Appellant argues the judgment of conviction is not evidence meeting the requirement of section 161.001(1)(T)(i) because it is not a final conviction. It is undisputed that appellant's conviction is on appeal and subject to reversal depending on the outcome of that appeal.

In support of his argument that the conviction must be final to constitute proof appellant was "convicted" as required by section 161.001(1)(T), appellant cites *In re S.K.S.*, 648 S.W.2d 402 (Tex. App.—San Antonio 1983, no writ). In that case, the father was convicted of the

murder of the mother. Murder of the other parent was not then a ground for termination, so the Department alleged and the trial court found the father engaged in conduct that endangered the child's physical and emotional well-being and failed to support the child in accordance with his ability. *Id.* at 403. The only evidence introduced in support of the allegation of engaging in conduct endangering the child's physical or emotional well-being was a copy of the judgment of the father's conviction for the murder of the child's mother. On appeal the court of appeals stated "surely a final conviction for the murder of the mother of the child would constitute the conduct described in sub-paragraph (E) of section 15.02 [now section 161.001(1)(E)], Tex. Fam. Code." *Id.* at 404. The court declined to address the father's challenge to the sufficiency of the evidence in support of that allegation "[s]ince the appellant's conviction is not a final conviction, and in view of our decision" concluding there was sufficient evidence to support the allegation that the father failed to support the child in accordance with his ability. *Id.* Thus, although the court of appeals expressed concern about the sufficiency of a non-final conviction to constitute evidence of engagement in endangering conduct, the court did not address father's challenge to the sufficiency of the evidence on that ground. *S.K.S.* does not hold that a non-final conviction is not evidence of conduct under section 161.001(1).

Appellant also argues that the family code "envisions that a final conviction would be best given the continuance provisions" of section 161.2011:

> A parent whose rights are subject to termination in a suit affecting the parent-child relationship and against whom criminal charges are filed that directly relate to the grounds for which termination is sought may file a motion requesting a continuance of the final trial in the suit until the criminal charges are resolved. The court may grant the motion only if the court finds that a continuance is in the best interest of the child. Notwithstanding any continuance granted, the court shall conduct status and permanency hearings with respect to the child as required by Chapter 263 and shall comply with the dismissal date under Section 263.401.

FAM. § 161.2011(a) (West Supp. 2013). Section 263.401 requires that suits where the Department has been appointed temporary managing conservator of a child and seeks

–10–

termination of parental rights or for the Department to be named conservator of the child be dismissed twelve to eighteen months after the Department's appointment as temporary managing conservator. FAM. § 263.401. As appellant stated in his brief, continuance of this case under section 161.2011(a) was not possible because the dismissal deadline under section 263.401 was only four days away when the trial in this case began. Although a final conviction may be preferable, nothing in sections 161.2011 or 161.001 requires that a conviction constituting a ground for termination be a final judgment.

In *Rian v. State*, No. 03-08-00155-CV, 2009 WL 2341868 (Tex. App.—Austin July 31, 2009, pet. denied) (mem. op.), the Austin Court of Appeals addressed the question of whether a conviction had to be final under section 161.001(1)(Q), which authorizes termination of parental rights when a parent "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition." *See* FAM. § 161.001(1)(Q). The court observed that section 161.001 did not expressly require convictions be final. *Rian*, at *2. The court concluded that the parent's conviction did not have to be final for termination under subsection (1)(Q). *See id.* ("We conclude that the legislature intended to permit termination under section 161.001 based on conviction without regard to whether appeals were exhausted."). The court intimated that requiring a conviction constituting a ground for termination be a final conviction with all appeals exhausted would not be rational given the short, strict deadline for prosecuting a termination case.

> The strict time requirements for prosecuting termination cases to finality, *see id.* § 263.401, add contextual weight to the view that the legislature intended non-final convictions to be admissible in termination cases. It is probable that criminal prosecutions and terminations based on the same behaviors will proceed in parallel, that evidence of the trial court's resolution of the criminal proceeding will be useful to the court considering the termination proceeding, and that the time constraints will mean that the termination proceeding will often occur before appeals in the criminal proceeding are exhausted. We conclude that appeals of

–11–

> criminal convictions need not be exhausted before evidence of those convictions is admissible in parental rights termination cases.

*Id.* Two other courts of appeals have agreed with the Austin court that convictions constituting grounds for termination under section 161.001 need not be final. *See In re W.B.W.*, 11-11-00269-CV, 2012 WL 2856067, *14 (Tex. App.—Eastland July 12, 2012, pet. denied) (mem. op.); *In re T.C.C.H.*, No. 07-11-00179-CV, 2011 WL 6757409, *9 (Tex. App.—Amarillo Dec. 22, 2011, no pet.) (mem. op.). We also agree with the Austin Court of Appeals and conclude that convictions alleged as grounds for termination under subsection 161.001(1)(T)(i) need not be final with all appeals exhausted to constitute evidence of a conviction supporting termination under subsection (1)(T)(i).

Appellant also argues there was no evidence he was convicted under sections 19.02 or 19.03 of the penal code because those statutory sections were not admitted into evidence so that the jury could compare them to the judgment and confirm that appellant had been convicted under those sections. The judgment of appellant's conviction for Swaim's murder was admitted into evidence, and it states: "Statute for offense: 19.02(b)(1), Penal Code." We conclude the judgment provided sufficient clear and convincing evidence that appellant was convicted of Swaim's murder under section 19.02 of the penal code.

We conclude there is legally and factually sufficient clear and convincing evidence to support the jury's finding that appellant was convicted of the murder of the other parent of the children under section 19.02 of the penal code. We overrule appellant's second issue.

Appellant's third, fourth, and fifth issues contend the evidence is legally and factually insufficient to support the jury's findings under other provisions of section 161.001(1). A finding of a single ground under section 161.001(1) is sufficient to support a judgment of termination. *In re B.K.D.*, 131 S.W.3d 10, 16 (Tex. App.—Fort Worth 2004, pet. denied); *see also* FAM. § 161.001. Because we have concluded the evidence is sufficient to support the jury's

–12–

finding on section 161.001(1)(T)(i), we need not address the sufficiency of the evidence to support the jury's findings on other provisions of section 161.001(1). Accordingly, we do not reach appellant's third, fourth, and fifth issues.

## Best Interest of the Children

In his sixth issue, appellant contends the evidence is legally and factually insufficient to support the jury's finding that termination of the parent-child relationship was in the best interest of the children. In determining whether termination of the parent-child relationship is in the child's best interest, we consider the following factors:

1. the child's desires;

2. the child's present and future emotional and physical needs;

3. the present and future emotional and physical danger to the child;

4. the parenting abilities of the persons seeking custody;

5. the programs available to the persons seeking custody to promote the best interest of the child;

6. the plans for the child by those persons seeking custody;

7. the stability of the home or proposed placement;

8. the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

9. any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive, and some factors may be inapplicable to some cases. *In re A.T.*, 406 S.W.3d 365, 370–71 (Tex. App.—Dallas 2013, pet. denied). Undisputed evidence of a single factor may be sufficient in a particular case to support a finding that termination is in the child's best interest. *Id.* at 371. However, the presence of scant evidence of each factor will not support such a finding. *Id.*

The record contains no evidence of the children's desires.

–13–

The record does not show that A.B. has any special emotional or physical needs. Hunnicutt testified that L.B. is getting counseling due to her condition when she was returned to Hunnicutt after Swaim's murder and appellant's arrest.

Concerning the present and future emotional and physical danger to the children, the evidence showed they are emotionally and physically safe in their current placements with Hunnicutt and Bowser. However, the evidence of L.B.'s condition when she was returned to Hunnicutt after only a few weeks with appellant and Swaim in January and early February 2013 demonstrates that the children might not be physically and emotionally safe if appellant again received possession of the children.

In this case, three individuals sought possession of the children: Hunnicutt, Bowser, and appellant's mother, Dina Derebery. The record shows Hunnicutt and Bowser have excellent parenting abilities and were approved by the Department to have possession of the children. Crystal Wrape, a conservatorship worker for the Department testified that Derebery had an extensive criminal history including "various drug charges," theft, two assault charges and spent two years in jail. Wrape testified she did not think Derebery would be protective of the children because Derebery does not believe appellant did anything wrong. Wrape also testified that during Derebery's supervised visitation with the children, which she usually exercised with appellant and Swaim, Derebery did not play with the children but stood off to one side taking pictures or retrieving items from the diaper bag for appellant and Swaim. Wrape also testified she had concerns about Derebery's home because Derebery would not let Wrape into her home. Derebery did not testify. Bowser testified appellant told her that when his children by another girlfriend stayed with Derebery, Derebery's house was filthy and she put the children in rooms without air conditioning while her dogs were kept in rooms with air conditioning.

There is no evidence of the programs available to the persons seeking custody.

Hunnicutt testified she planned to adopt L.B. and that she would adopt A.B. if Bowser did not adopt him. Bowser testified that she wanted to adopt A.B. Witnesses for the Department testified that they planned to continue the placement of the children with Hunnicutt and Bowser. Appellant testified he wanted the children to be placed with his mother, Derebery, where they can have access to all their family members. Appellant testified that he had issues with Hunnicutt because she kept the children from some of appellant's family members. However, the evidence shows the Department did not allow Hunnicutt to permit visitation with the children by anyone who had not been approved by the Department.

The evidence shows that Bowser's and Hunnicutt's homes are stable. At the time of trial, Hunnicutt was seventy-one years old, and she acknowledged her advancing age may be an issue in the future. However, she testified her son, David Starks, who was Swaim's uncle, was ready and willing to care for the children if Hunnicutt should become unable to care for them. Hunnicutt was creating a will with a trust to provide funding for L.B. and A.B.'s care. Starks was fifty-one years old, married only once and had been married for over thirty-two years, and had raised a son and a daughter. The evidence showed Starks's home was stable.

Besides the evidence that appellant murdered Swaim, the record contains evidence that the parent-child relationship is not a proper one. That evidence includes appellant's use of alcohol and drugs while caring for his children. The record also contains evidence of domestic violence in the home, including him and Swaim screaming at each other in the middle of the night and throwing things, and appellant pushing Swaim out of a moving car while the children were in the car. The record also contains evidence suggesting appellant physically abused his girlfriends, including Swaim. Witnesses testified that the girlfriends were bruised, on their arms, legs, and faces, including black eyes and swollen noses, when the witnesses saw them. However, other witnesses testified they did not observe any bruises. Bowser testified she saw

appellant try to choke one of his girlfriends eleven or twelve years before the trial. Appellant offered no excuse for these incidents, and he claimed the Fifth Amendment privilege not to incriminate himself when asked about them.

On appeal, appellant argues the jury's finding on the best-interest element is not supported by sufficient evidence because appellant's conviction is not final and "is based on questionable facts." As discussed above, the fact that appellant's appeals have not been exhausted does not bar the conviction from being used as a ground for termination. The evidence that appellant murdered Swaim, as presented in this case, was circumstantial, but it was not "based on questionable facts." According to the medical examiner, Swaim was strangled and beaten to death. According to appellant's testimony at his criminal trial, Swaim never left the home and died in the back bedroom. The record contains no evidence of anyone being present at the time except appellant and two-year-old L.B. Instead of seeking emergency help when he noticed Swaim was stiff and cold or notifying the authorities when he realized Swaim had died, he wrapped her in garbage bags, rolled her up in carpet, and left her body on his employer's trash pile to be burned.

Appellant also asserts the evidence is insufficient because Hunnicutt is in her seventies and will have to depend on Starks to care for the children should something happen to her. However, nothing in the record shows that Starks's care for the children would be harmful. Appellant also argues he has adequate education, work, parenting, and life experience to care for the children should he be acquitted. Appellant also asserts he had been complying with the Department's programs to obtain possession of the children when he was arrested. However, the record contains evidence of appellant's drug and alcohol use while caring for the children, transporting them while intoxicated, and his history of domestic violence.

Appellant's conviction for murdering Swaim, the circumstantial evidence that he had physically abused Swaim and his other girlfriends, the evidence of the domestic violence in appellant's home, his history of alcohol and drug abuse while caring for the children, and the traumatized condition and behavior of L.B. when she was returned to Hunnicutt after Swaim's murder and appellant's arrest constitute clear and convincing evidence that termination of appellant's parental rights is in L.B. and A.B.'s best interest.

After considering all the evidence, we conclude the evidence is legally and factually sufficient to support the jury's determination that termination of the parent-child relationship between appellant and L.B. and A.B. was in the children's best interest  We overrule appellant's sixth issue.

## CONCLUSION

We affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

131615F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

In the Interest of L.B. and A.B., Children

No. 05-13-01615-CV

On Appeal from the 15th Judicial District
Court, Grayson County, Texas
Trial Court Cause No. FA-12-0485.
Opinion delivered by Justice Myers.
Justices O'Neill and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered this 20th day of March, 2014.


/Lana Myers
LANA MYERS
JUSTICE